JjGREMILLION, Judge.
In this case, the plaintiff, Mickey De-Wayne Mills, appeals the judgment of the trial court naming certain persons primary custodians of his grandchildren. For the following reasons, we affirm in part, reverse in part, and render.
FACTUAL AND PROCEDURAL BACKGROUND
Kristy Mills gave birth to three children, Jacob and Macy, whose father is John Hardy, and Brennon, whose father is Russell Lippman. Tragically, Kristy was mur *445 dered on March 30, 2000; Lippman has been charged with this crime. .In April 2001, Mickey, Kristy’s father, filed a petition for custody of his grandchildren. At the time the proceedings were filed, both Hardy and Lippman were incarcerated. Sara Laing, Mills’ ex-wife and Kristy’s mother, also filed a petition for custody of the three children.[1] Lisa and Aaron Jolly, Lippman’s sister and brother-in-law, filed a petition for intervention seeking custody of Brennon. Following a hearing in October 2001, the trial court rendered lengthy reasons for judgment, a portion of which follows:
Mickey Mills testified that he and his wife, Wanda, lived in the Manifest community, that he was 51 years old, in good health and had worked for Trans Ocean for 15 years. Mr. Mills testified his income for 2000 was $54,000 and that he has a 6 bedroom, 3 bathroom house, so there was ample room for his three grandchildren; and he could support them. Also Mr. Mills testified he has a 7 year old son, born of his 10 year marriage to Wanda Mills. Mr. Mills testified Kristy and his grandchildren spent a good deal of time at his home prior to his daughter’s death and he wanted to keep the children together. Mr. Mills testified his wife did not work outside the home and could help care for the children. Mr. Mills work schedule is such that he works 7 days and is home 7 days.
li>Mr. Mills acknowledged that Sarah Laing had been more involved with the children over the past few years than he had. Mr. Mills also admitted he had no relationship with John Hardy prior to Kristy’s death because Mr. Hardy had “beat up” Kristy and, Mr. Hardy was on drugs. Also Mr. Mills would not permit Russell Lippman to come to his home while Kristy was living with Russell Lippman. Mr. Mills admitted he has no relationship with Brennon’s paternal grandparents or Jacob and Macy’s paternal grandparents; and that he did not know Brennon’s half sisters. Mr. Mills stated he did not want Russell Lippman at his home because he believed Mr. Lippman killed his daughter.
Wanda Mills testified she was 39 years old and had a 21 year old son from a prior marriage and a 7 year old son. Mrs. Mills stated she can help her husband care for Brennon, Macy and Jacob. She also stated she kept the children many times prior to Kristy’s death. Mrs. Mills testified that John Hardy would be welcome in her home and he had been to her home previously.
[[Image here]]
Mrs. Mills admitted she and her husband did not financially support Kristy and her children and that Ms. Laing regularly contributed to their support. Mrs. Mills also admitted that Kristy and the children resided with Ms. Laing part time and that Ms. Laing has spent more time with the children than the Mills had. Mrs. Mills also acknowledged that she had a good relationship with the Jollys but had not spoken to any other members of the Lippman family in about 6 months. Mrs. Mills testified she had seen Beth Baker, mother of Brennon’s half sister, McKenzie, one time, but there was no regular visitation between McKenzie and Brennon when he was with the Mills. Mrs. Mills admitted there was a “tense relationship” with everyone involved.
*446 Chuck Edwards testified Mrs. Mills had worked for him for several years, and that she was an excellent employee and was well liked by his staff and clients. Mr. Edwards testified that Mrs. Mills terminated her employment to help her stepdaughter with problems she was having.
Reverend Randy Coleman testified that he was an interim pastor, at Pattern Baptist Church and while he was the pastor, Mickey and Wanda Mills attended his church. Reverend Coleman testified that while he was pastor, the Mills often brought the children to church with them.
Brent Chapman testified he was the son of Wanda Mills. He was 12 when his mother married Mickey Mills and Mr. Mills had been like a Dad to him. Mr. Mills took Mr. Chapman hunting and fishing when |3he lived -with his mother and Mr. Mills.
The parties stipulated that if called, five other witnesses would have testified the Mills have a good relationship with the children and took good care of the children while they had custody of the children.
Dr. Geraldine Cohen, a board certified pediatrician and child adolescent psychiatrist, testified she met with Mickey and Wanda Mills on two occasions, once in July, 2000 and again in October, 2001. She also met with John Hardy, Sarah Laing, Ms. Laing’s oldest daughter, Kim, Mrs. Mills son by a prior marriage, Brent Chapman, Macy Mills and Jacob Hardy. She gathered information and a history of the children from the Mills and Ms. Laing. Dr. Cohen observed the children’s interaction with the Mills, Mr. Hardy and Ms. Laing; and also observed them playing with toys. At the first meeting, Dr. Cohen observed that the children were very affectionate to their father, John Hardy and that Jacob was having problems with anger.
On October 5, 2001, Dr. Cohen saw Macy, Jacob and the Mills. Macy was ill and stayed close to Mrs. Mills. Jacob was very sad, talked about his mother and stated that he wanted to be with his mother in heaven. Dr. Cohen determined that the children had been exposed to violence — Jacob was in the same room with his mother when she was shot and Macy was in an adjoining room, and they saw her abdominal wound.
Dr. Cohen testified it is very important in the first year of a child’s life that the child have a stable environment. Dr. Cohen testified that a child develops his sense of trust and security in the first year of life. Dr. Cohen also testified it is very difficult for a child to be away from his principal caretaker. She analogized that any time away from the caretaker as synonymous to the death of a caretaker in the eyes of a baby. Dr. Cohen testified it is not in the best interest of a child that he be moved from place to place with different caretakers. She recommended that Brennon be placed with the caretakers who had been primarily responsible for his care prior to the court hearing.
[[Image here]]
When questioned by the Court about her opinion as to Macy and Jacob residing a week with Ms. Laing and a week with the Mills, Dr. Cohen testified this can only work if the families are cooperative. Dr. Cohen testified the children are more at risk in developing mental problems because of violence they have witnessed. Dr. Cohen recommended the children be in a stable environment and noted she was informed there was a strong relationship between Jacob and his ^grandmother Sarah Laing. Dr. Co *447 hen also testified that Jacob was stressed by a sense of split loyalty — i.e. which family he should be allied with.
Ms. Laing’s case was presented after Mr. Mills concluded his presentation of testimony and evidence. Ms. Laing called Cheryl McClure who testified she was a close friend of Kristy Mills and knew of Sarah Laing’s close relationship with Kristy and her children. Ms. McClure testified that Jacob was very close to his grandmother, Sarah. Ms. McClure testified Kristy had lived with her mother on and off for 5 years. Ms. McClure testified that Ms. Laing paid Kristy’s bills and gave Jacob his lunch money and that the Mills did not contribute very much to the support of Kristy and her children. Ms. McClure did acknowledge that the Mills had probably babysat for Kristy between 20 and 50 times over the last 5 years.
J.D. Hardy testified he was John Hardy’s father. He testified he had known Ms. Laing and Kristy all their lives and knew that Kristy’s children had stayed with their grandmother a lot over the years. Mr. Hardy testified that when Jacob and Macy came to his home they would often say then wanted to go to “Nanna’s house”, a phrase they used to refer to Ms. Laing. Mr. Hardy also stated he knew Ms. Laing had provided financial support to Jacob and Macy over the past few years. Mr. Hardy also related that Ms. Laing gets along well with his son, John Hardy.
Kim Boyette testified she was Kristy’s sister. Ms. Boyette stated she sees her mother daily and she saw Kristy and her children almost every day. Ms. Boyette testified that over the past 6 years Kristy and her children primarily resided with her mother and that Ms. Laing paid for the children’s food and clothing. She stated that Kristy had moved out of her mother[’]s home 3 or 4 times, but “she always moved back with Mama”. Ms. Boyette testified Kristy and her children were not as close to Mr. Mills as they were to Ms. Laing. Ms. Boyette testified that Macy and Jacob were really close to her mother and she had seen the Mills show partiality to Macy over Jacob. Ms. Boyette stated that “the kids belong with my Mama.” Ms. Boy-ette began to cry and stated “It’s not that I don’t want my Daddy to have them”.
On cross examination by Mr. Mill’s counsel, Ms. Boyette admitted that Kristy lived with John Hardy and Russell Lippman for several months. Ms. Boyette also testified that sometimes her father would discuss with Mrs. Mills whether or not to give Kristy money and often after the discussion, did not give Kristy money. Ms. Boyette also acknowledged her father was not pleased with Kristy’s relationship with Mr. Hardy or Mr. Lippman.
IfiDonnie Laing testified he was married to Sarah and they had separated in August, 1999[,] but were not divorced. Mr. Laing testified that he knew for the past 6 years Jacob had stayed with Sarah most of the time. He testified the Mills seldom kept the children when he and Ms. Laing lived together; and that Ms. Laing provided a lot of financial support for Kristy and the children. Mr. Laing acknowledged that Ms. Laing was often the primary caretaker for children caring for them more than Kristy. Mr. Laing stated he knew Ms. Laing had taken Jacob and Macy to church and that he had heard her read bible stories to the children.
Gary Wagner testified he was the pastor at Evangeline Baptist Church and had held that position for approximately 1/& years. Reverend Wagner testified he was Jacob’s t-ball coach and before *448 Kristy’s death, Ms. Laing brought Jacob to practice. After Kristy[’]s death Mr. Mills would also bring Jacob to practice. Reverend Wagner also testified that in July, 2000[’] Sarah Laing brought Macy and Jacob to Bible School and she helped with Bible School every night. Revered Wagner stated that he knew Ms. Laing was very attached to the children and “the children loved her like a mother.”
Sarah Laing testified she had rented a four bedroom house in Jonesville with a small back yard. She testified she had not worked since Kristy’s death; and had used her savings and church donations to pay bills for the past few months. Ms. Laing testified that she sits with the elderly and has not worked since March 2000. When she was employed, she worked 7 days and was off for 7 days; and she earned $85.00 per day. Ms. Laing testified she would soon be working in Ferriday which is located about 16 miles from Jonesville. Ms. La-ing testified she desired to obtain custody of all 8 of Kristy’s children so she could “keep the children together”.
When questioned by counsel for the Jollys, Ms. Laing acknowledged she and the Jollys had shared approximately equal custody of Brennon in the past few months. She also acknowledged the Jolly’s love for Brennon and that they take good care of Brennon. In addition, Ms. Laing admitted she had a better relationship with the Jollys than the Mills.
Under cross examination by Mr. Mills’ counsel, Ms. Laing stated she will be 50 years old in September, 2001, that she doesn’t drink but smokes about 1 pack of cigarettes per day, but smokes outside her home. Ms. Laing admitted she had been married 6 times and did not intend to reconcile with Mr. Laing. Ms. Laing admitted she had no health insurance and had depleted her savings. Ms. Laing testified she had kept the children when Kristy worked and she believed the Mills | fi“showed partiality” toward Macy and Jacob felt “left out”. Ms. Laing also testified that she and Mrs. Mills had a few problems and that she became upset when Mrs. Mills enrolled Macy in Head Start without consulting her. Ms. Laing also acknowledged she and Mr. Mills had no problems about the children.
Aaron Jolly testified he is a plumber and a Methodist minister. He stated he has been married to Lisa Lippman Jolly for 19 years and his wife is the sister of Russell Lippman and the paternal aunt of Brennon Lippman. Mr. Jolly testified he and his wife have two children, David, age 15 and Katelin, age 10; and Ms. Jolly is a house wife. Mr. Jolly also testified he and his wife have a four bedroom, three bath home and in 2000 his gross income from his plumbing business was in excess of $110,000. Mr. Jolly testified that he and his wife love Brennon and desire to obtain custody of Brennon.
Mrs. Jolly testified she is a housewife and can care for Brennon. She testified she and her husband are financially able to care for Brennon, and that they love Brennon and desire to obtain custody of Brennon. Mrs. Jolly also testified she gets along well with Ms. Laing and the Mills.
Subsequently, the trial court awarded custody of the children as follows:
1. Brennon Lippman:
A) Joint custody of Brennon Lippman is hereby awarded to Aaron and Lisa Jolly and Sarah Laing, with Aaron and Lisa Jolly being hereby designated as primary, physical and legal custodians. The child shall remain *449 in the physical custody of Aaron and Lisa Jolly at all times except the visitation periods provided hereinbe-low.
B) Sarah Laing shall enjoy physical custody of Brennon Lippman for 4 hours on Tuesday and Friday of every week and on Sunday of every other week.
C) Mickey D. Mills shall enjoy visitations [sic] with Brennon Lippman for a minimum of 8 hours each week when he is home from work, and shall provide 36 hours advance notice to Aaron and Lisa Jolly prior to exercising visitation.
D) Macy Mills and Jacob Hardy shall spend 3 hours each week with Bren-non Lippman, and the parties are ordered to adjust their visitation schedules accordingly.
|7E) From and after such time as Bren-non Lippman shall have attained the age of 3 years, Mickey D. Mills shall enjoy visitation from 9:00 a.m. until 2:00 p.m. on the first Saturday that he is home from work, and Sarah Laing shall enjoy visitation with Brennon Lippman from 9:00 a.m. until 2:00 p.m. on the second Saturday of each month.
F) Aaron and Lisa Jolly and Sarah La-ing must confer with each other to exchange information concerning the health, education and welfare of Brennon Lippman and in making decisions concerning Brennon Lipp-man.
2.Jacob Hardy:
A) Joint custody of Jacob Hardy is awarded to Sarah Laing and Mickey Mills, with Sarah Laing designated primary physical and legal custodian.
B) Sarah Laing shall enjoy physical custody of Jacob Hardy from January 1st through May 30th and from August 1st through December 31st of each year, and Mickey Mills shall enjoy physical custody of Jacob Hardy from June 1st through July 31st each year.
C)During the periods of Sarah Laing’s physical custody of Jacob Hardy, Mickey Mills shall enjoy visitation with Jacob Hardy on the Saturday on the first weekend he is home from work and on the Sunday of the next weekend that he is home from work, from 3:00 p.m. until 6:00 p.m. each Wednesday when he is home from work, and during the following holiday visitation periods:
1. Thanksgiving: From 6:00 p.m. on the day school lets out for Thanksgiving until 5:00 p.m. on Wednesday before Thanksgiving in the even numbered years and from 5:00 p.m. on the day before Thanksgiving until 8:00 p.m. on the day prior to the commencement of school at the end of Thanksgiving holidays in odd numbered years.
2. Easter: From 5:00 p.m. on the Thursday before Easter until 8:00 p.m. on the day prior to school commencing after the Easter holidays in even numbered years and from 5:00 p.m. on the evening school lets out for |SE aster holidays until 5:00 p.m. on the Thursday before Easter in odd numbered years.
3. Christmas: From 5:00 p.m. on the day school lets out for Christmas until 5:00 p.m. on December 26th in even numbered years, and from 5:00 p.m. on December 26th until 8:00 p.m. on the day before school is to resume after New Years in odd numbered years.
4. Child’s Birthday: Beginning in 2004, Mr. Mills shall enjoy visita *450 tion with Jacob Hardy on the child’s birthday in even numbered years.
5. Father’s Day: On Father’s Day weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday, Father’s Day.
6. Mother’s Day: On Mother’s Day weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday, Mother’s Day.
D) Sarah Laing shall enjoy visitation with Jacob Hardy on Mother’s Day weekend and Jacob Hardy’s birthday in 2002 and 2003. Beginning in 2004, Sarah Laing shall enjoy visitation with Jacob Hardy on the Child’s birthday in odd numbered years.
E) John Hardy shall enjoy visitation with Jacob Hardy in the presence of Sarah Laing, Wanda Mills or his sister, Sue Hardy, for a minimum of 10 hours per week, and shall provide 36 hours advance notice to whichever of Sarah Laing or Mickey Mills has physical custody at the time when John Hardy’s visitation is to be exercised.
F) Holiday and Birthday visitation shall supercede any other specified visitation.
3. Macy Mills:
A) Joint custody of Macy Mills is awarded to Sarah Laing and Mickey D. Mills with Sarah Laing being designated primary, physical and legal custodian.
IflB) Sarah Laing shall enjoy physical custody of Macy Mills from June 1st through December 31st of each year, and Mickey Mills shall enjoy physical custody of Macy Mills from January 1st through May 31st of each year.
C) Sarah Laing shall enjoy visitation with Macy Mills from 5:00 p.m. on Friday until 7:00 p.m. on Sunday on the second and fourth weekends of each month that she does not have physical custody and each Tuesday from 3:00 p.m. until 6:00 p.m.
D) Mickey Mills will enjoy the following holiday visitation with Macy Mills.
1. Thanksgiving: From 5:00 p.m. on the day school lets out for Thanksgiving until 5:00 p.m. the Wednesday before Thanksgiving in the even numbered years and from 5:00 p.m. on the day before Thanksgiving until 8:00 p.m. on the day prior to the commencement [of] school at the end of Thanksgiving holidays in odd numbered years.
2. Easter: From 5:00 p.m. on the Thursday before Easter until 8:00 p.m. on the day prior to school commencing after the Easter holidays in even numbered years and from 5:00 p.m. on the evening school lets out for Easter holidays until 5:00 p.m. on the Thursday before Easter in odd numbered years.
3. Christmas: From 5:00 p.m. on the day school lets out for Christmas until 5:00 p.m. on December 26th in even numbered years, and from 5:00 p.m. on December 26th until 8:00 p.m. on the day before school is to resume after New Years in odd numbered years.
4. Child’s Birthday: Mickey Mills shall have visitation of Macy Mills on Macy Mills’ birthday on odd numbered years, and Sarah Laing shall have custody of Macy Mills on Macy Mill’s Birthday on even numbered years.
| in5. Fathers Day: On Fathers Day weekend beginning at 5:00 p.m. on *451 Friday and ending at 8:00 p.m. on Sunday, Fathers Day.
6. Mothers Day: On Mothers Day weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday, Mothers Day.
E) John Hardy shall enjoy visitation with Macy Mills in the presence of Sarah Laing, Wanda Mills or his sister, Sue Hardy, for a minimum of 10 hours per week, and shall provide 36 hours advance notice to whichever of Sarah Laing or Mickey Mills has physical custody at the time when John Hardy’s visitation is to be exercised.
F) Holiday and Birthday visitations shall supercede in other specified visitation.
We believe the trial court intended to make the same time arrangement for Macy as it did for Jacob and we, therefore, amend Paragraph 3(B) of the judgment as follows:
B) Sarah Laing shall enjoy physical custody of Macy Mills from January 1st through May 30th and from August 1st through December 31st of each year, and Mickey Mills shall enjoy physical custody of Macy Mills from June 1st through July 31st each year.
ISSUES
Mickey claims that the trial court’s determination of custody, specifically its finding that it would be in the best interest of Jacob, Macy, and Brennon that Sara be designated primary custodian of Jacob and Macy and the Jollys be designated primary custodian of Brennon, was erroneous.
STANDARD OF REVIEW
The law is well settled that the trial court’s finding with regard to custody matters is entitled to great weight on appeal as it is in a superior position to In assess what the children’s best interests are based on its consideration of the testimony of the parties and witnesses. AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756; Miller v. Miller, 01-0356 (La.App. 3 Cir. 10/31/01), 799 So.2d 753. Therefore, the appellate court may only reverse the trial court upon a showing of manifest error or if its finding is clearly wrong. Absent such a showing, the appellate court shall not reverse the trial court regardless of whether its decision would have been different had it been sitting as the trier of fact.
CUSTODY
In all child custody cases, the primary consideration is the best interests of the children. See La.Civ.Code art. 131. Numerous factors are at the trial court’s disposal in making this determination and are set forth in La.Civ.Code art. 134. They include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
*452 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
1^.(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
However, the trial court is not limited to considering the factors enunciated and should consider the totality of the facts and circumstances in each particular situation. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, writ denied 96-1650 (La.10/25/96), 681 So.2d 365.
Mickey argues that primary custody of all three children should be with him. Central to his argument is the fact that Brennon will be raised separately from his half-siblings, Macy and Jacob. Accordingly, we will address the issue of splitting apart siblings first. While it is true that generally, it is preferable to keep siblings together, we are aware that it is not required if the trial court determines that separating them would be in the best interests of the particular children. Wallace v. Wallace, 420 So.2d 1326 (La.App. 3 Cir. 1982). See also Meredith v. Meredith, 521 So.2d 793 (La.App. 2 Cir.1988), Daugherty v. Cromwell, 501 So.2d 955 (La.App. 2 Cir.1987), Price v. Price, 451 So.2d 1187 (La.App. 1 Cir.1984). We do, however, note that all of the above cases dealt with the natural parents of the children at issue rather than grandparents and other collateral relations.
113The seminal case pertaining to the splitting apart of siblings in custody awards is Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969), which also dealt with the children’s parents. That case stated the rule for split custody as follows:
The separation of children of a family though sometimes necessary, is a custodial disposition that courts seek to avoid. Normally, the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection. Wfien feasible, a court should shape its orders to maintain family solidarity.
Id. at 843.
We have held that “the separation of children of a family is a disposition courts should avoid whenever possible. In the absence of unusual circumstances, the children should not be deprived of one another’s comfort and moral support.” R.J.R. v. J.A.I.R.C., 92-1314 (La.App. 3 Cir. 10/6/93), 625 So.2d 374, writ denied, 93-2741 (La.1/7/94), 631 So.2d 450. Finally, the supreme court has recently visited this issue. In Howze v. Howze, 99-0852 p. 3 (La.5/26/99), 735 So.2d 619, 621, the supreme court cited Tiffee with approval before noting that a four year age difference between the children “is not so large as to preclude the children from sharing some similar interests and from deriving great benefit and comfort from living together as part of a family.” The supreme court, in unifying custody to the mother, noted in Howze that the children were full-blooded siblings, that no expert testified to show that separating the children was in their best interests, and that the trial court failed to set forth any reasons why sepa *453 rating the children would alleviate any problems they had.
In this particular case, Brennon is a half-sibling to Macy and Jacob. He also has a half-sibling on his paternal side, an older sister, McKenzie, who is in the custody of her mother and with whom the Jollys are in contact. At the time these luProceedings began, Brennon was approximately two-and-a-half months old. Initially on April 8, 2001, all three children, including Brennon, were placed in the custody of Mickey by an ex parte order of the trial court. Following a pretrial conference on April 12, 2001, the trial court transferred custody of Jacob and Macy to Sara and of Brennon to the Jollys. Bren-non has remained in the custody of the Jollys since that time and, unfortunately, due to his tender age, has not formed any strong lasting bonds with Macy and Jacob. Trial was had on October 8 and 11, 2000, and the matter taken under advisement. Reasons for judgment were rendered January 18, 2002, and judgment was executed on May 13, 2002, as set forth above.
We find that the trial court considered the Article 134 factors in awarding primary custody of Brennon to the Jollys. Based on our review of the record, we hold that the trial court’s award of custody to the Jollys is not clearly wrong or manifestly erroneous, even if we would have held differently. Not only was there an expert witness relied on by the trial court, but the trial court explained that the Jollys were in the best position to facilitate a relationship with Brennon and all of his half-siblings as they got along with all the parties and were also in contact with McKenzie. However, we hold that the trial court was manifestly erroneous in failing to award joint custody to Mickey based on the factors set forth in Article 134, particularly subparts (1), (2), (3), (4), (6), (7), and (12). We feel this is further supported by the fact that the trial court initially placed custody with Mickey and the trial court’s finding that all of the parties “are each responsible and suitable individuals who love these children.”
1! ¡/Moreover, we cannot say that the trial court abused its discretion in awarding Sara primary physical custody of Jacob and Macy. Mickey argues that the trial court did not recognize the clear advantage he has pertaining to the factors enunciated under Article 134. While Mickey goes into great detail explaining the particular advantages and disadvantages each party has, he also correctly states that these factors are not to be mechanically applied by the trial court and that this list is non-exclusive. See Gautreau v. Gautreau, 96-1548 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339, writ denied, 97-1939 (La.11/7/97, 703 So.2d 1272); La.Civ. Code art. 134, comments (a)(b) & (c). Mickey claims that the “trial court did not specifically review the considerations imposed by La.C.C. Art. 134.” However, in its reasons for judgment, the trial court specifically stated that it considered all the factors contained in Article 134 when formulating its custody awards. Again, based on our review of the record and the trial court’s superior position to assess the particular circumstances of the case together with the concessions made by Mickey at oral argument that he and Sara had made an agreement on the sharing of the Jacob and Macy, we cannot say that the trial court was manifestly erroneous in awarding Sara primary physical custody of Jacob and Macy. The trial court found that Jacob and Macy had a very strong bond with Sara, who has been involved in their day-to-day rearing for the greater portion of their lives. Further, it appears that the trial court relied on the testimony of Kim Boyette, J.D. Hardy, Cheryl McClure, and Donnie Laing, rather than Mickey’s numerous witnesses in making *454 its decision. We further note that it was abundantly clear from the record that all the parties involved have a deep affection for these three young children, but regardless of how we would have decided matters at the trial 11filevel, we cannot say the trial court committed manifest in its decision in making Sara the domiciliary custodian.
The trial court’s custody award attempts to provides ample time for Brennon to develop a relationship with his half-siblings as he grows up, but it falls woefully short of accomplishing its goal. As such, we find that the trial court’s visitation plan as it relates to Brennon was manifestly erroneous/clearly wrong. The trial court recognized that all the parties “are each responsible and suitable individuals who love these children.” With that in mind and in accordance with the rule of law set forth in Tiffee, we find that the plan should provide for significantly more visitation of the siblings. Because Sara did not appeal and the custody of McKenzie is not before us, we cannot adjust those arrangements. We are, therefore, constrained to deal only with the visitation arrangement between Brennon and Mickey and the Jollys. Accordingly, we amend the trial court’s judgment in the following respects:
DECREE
IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the trial court be amended to read as follows:
1. Brennon Lippman:
A)Joint custody of Brennon Lippman is hereby awarded to Aaron and Lisa Jolly, Sarah Laing, and Mickey Mills, with Aaron and Lisa Jolly being hereby designated as primary, physical and legal custodians. The child shall remain in the physical custody of Aaron and Lisa Jolly at all times except the visitation periods provided hereinbelow.
B) Sarah Laing shall enjoy physical custody of Brennon Lippman for 4 hours on Tuesday and Friday of every week and on Sunday of every other week. Jacob and Macy shall |17be present for these visits.
C) Mickey D. Mills shall enjoy visitation with Brennon Lippman for a minimum of 24 hours each week when he is home from work, and shall provide 36 hours advance notice to Aaron and Lisa Jolly prior to exercising visitation. Jacob and Macy shall be present for these visits.
D) Deleted
E) -From-and after such time as Bren-non Lippman shall have attained the age-of 3 years, Mickey D. Mills shall enjoy visitation from 9:00 a.m. on the first Saturday that he is home from work until 6:00 p.m. on Sunday, and Sarah Laing shall, enjoy visitation with Brennon Lippman from 9:00 a.m. until 2:00 p.m. on the second Saturday of each month.
[[Image here]]
G) Mickey Mills shall enjoy visitation with Brennon Lippman from June 1st through July 31st of each year.
H) Aaron and Lisa Jolly shall have custody of Brennon Lippman every other weekend during the period set forth in Paragraph (G) above from 9:00 a.m. on Saturday until 6:00 p.m. on Sunday. This weekend custody shall coincide with the weekend visitation afforded Sara Laing during this same period.
I) Mickey Mills shall enjoy visitation with Brennon Lippman during the following holiday visitation periods:
1. Thanksgiving: From 5:00 p.m. on the day school lets out for Thanksgiving until 5:00 p.m. on *455 Wednesday before Thanksgiving in the even numbered years and from 5:00 p.m. on the day before Thanksgiving until 8:00 p.m. on the day prior to the commencement of school at the end of Thanksgiving holidays in odd numbered years.
2. Easter: From 5:00 p.m. on the Thursday before Easter until 8:00 p.m. on the day prior to school commencing after the Easter holidays in even numbered years and from liS5:00 p.m. on the evening school lets out for Easter holidays until 5:00 p.m. on the Thursday before Easter in odd numbered years.
3. Christmas: From 5:00 p.m. on the day school lets out for Christmas until 5:00 p.m. on December 26th in even numbered years, and from 5:00 p.m. on December 26th until 8:00 p.m. on the day before school is to resume after New Years in odd numbered years.
4. Child’s Birthday: Beginning in 2004, Mr. Mills shall enjoy visitation with Jacob Hardy on the child’s birthday in even numbered years.
5. Father’s Day: On Father’s Day weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday, Father’s Day.
6. Mother’s Day: On Mother’s Day weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday, Mother’s Day.
We further replace Paragraph 3(B) to read as follows:
Sara Laing shall enjoy physical custody of Macy Mills from January 1st through May 30th and from August 1st through December 31st of each year, and Mickey Mills shall enjoy physical custody of Macy Mills from June 1st through July 31st each year.
The judgment is affirmed in all other respects.
All costs of this appeal are assessed one half to Mickey DeWayne Mills and one half to Aaron and Lisa Jolly.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
PETERS, J., concurs in the result.

. Mrs. Laing’s first name is spelled "Sarah” throughout the trial court’s opinion, we note that the correct spelling is "Sara.”