691 So.2d 780 (1997)
Jody Miller ROBERT
v.
Nicole Ann GAUDET.
No. 96 CA 2506.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*781 Andrew Wise, Thibodaux, for Plaintiff Jody Miller Robert.
Leslie J. Clement, Jr., Thibodaux, for Defendant-Appellant Nicole Ann Gaudet.
Daniel A. Cavell, Thibodaux, for Appellees Hazel Maddock Robert, David Paul Robert.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The issue in this child custody case is whether the trial court erred in divesting the natural parent of custody, and awarding sole custody to related nonparents. We find that the trial court abused its discretion in its divestiture of the mother's custody. Based on our thorough review of the record, we find that maintenance of joint custody to the mother, Nicole Ann Gaudet, would not result in substantial harm to the child, KCG. Thus, we reverse the part of the judgment that divested the mother of joint custody and awarded sole custody to the paternal grandparents.
However, in light of the facts present in this case, the award of sole custody or domiciliary status to Nicole, would result in substantial harm. The child's paternal grandparents, Mr. and Mrs. David Robert (the Roberts), are awarded joint custody and designated the domiciliary custodians. We amend the visitation schedule awarded to the mother in the 1996 judgment to include more liberal visitation. Nicole is awarded the first two weeks of every month during the summer.

FACTS AND PROCEDURAL BACKGROUND
An understanding of this case is easier after a review of the pertinent facts and past judgments rendered between the parties: Nicole, Mr. and Mrs. Robert, and the father, Jody Miller Robert.
1. On December 6, 1991, the child, KCG, was born to Nicole and Jody. They never married. Both parents used illegal drugs. When the mother found that she was unable to care for the baby within KCG's first year of life, the paternal grandparents, Mr. and Mrs. David Robert, stepped in and cared for the child.
2. On August 7, 1992, a consent decree was signed that awarded sole custody to Jody, with visitation to Nicole.
3. On January 19, 1993, the trial court signed a consent judgment that awarded custody to the paternal grandparents, Mr. and Mrs. David Robert.
4. Although custody changed between 1991 and 1994, the child resided with Mr. and Mrs. Robert, off and on, for much of that time.
5. On August 29, 1994, the trial court signed a consent judgment that awarded joint custody to Jody and Nicole. Jody was appointed domiciliary parent. Nicole was given visitation, which included one week every month. Mr. and Mrs. Robert agreed to give up custody because they believed that Jody and Nicole had changed and could be good parents. Both of the parents had stabilized and *782 obtained full time jobs. Jody had married. Nicole was attending A.A. meetings and working full time.
6. Nicole has never been designated the domiciliary parent.
The present dispute arose in early 1996. On March 6, 1996, Nicole filed a motion for change of custody. She asked for sole custody, or joint custody, with her as domiciliary parent; or joint custody, with more liberal visitation. Nicole alleged changes in circumstances since the 1994 joint custody judgment. The most significant alleged change was that Jody had abdicated the care of KCG to his parents, Mr. and Mrs. Robert.
In response, the paternal grandparents, Mr. and Mrs. Roberts, filed a rule for custody on March 18, 1996. The Roberts alleged that changes had occurred in both Jody's and Nicole's lives that affected the child. At the time, the Roberts were again taking care of KCG, had enrolled him in play school, and were meeting his financial needs. The Roberts also asked for temporary custody, which was granted by ex parte order on March 25, 1996. The record contains no objection to this order.
A hearing was held on May 24th and 29th, 1996. At the trial on the rule, Nicole and the grandparents presented their cases.
A social worker testified on behalf of Nicole. Based on the social worker's meeting with Nicole and the reports of two other counselors, the social worker believed that Nicole was a suitable candidate for custody. However, the social worker was unaware of the problems in the relationship between Nicole and Mr. Kevin Mendoza that necessitated calling the police.
Evidence was introduced that the police had been called to break up disputes between the couple on two occasions. Nicole and Mr. Mendoza testified that they attended counseling. The two of them moved in with Nicole's parents for a while. The couple contends that Nicole's parents helped them to better communicate.
Nicole's marital and family situation had not remained static since the filing of the rules for custody. It was discovered that the marriage between Nicole and Kevin Mendoza was not valid. Mr. Mendoza's divorce from his first wife was not final. The error was an inadvertent one on the part of Mr. Mendoza. Steps were being taken to finalize that divorce. Also, Nicole had given birth to another child. The couple and child had recently moved into a house. The house had a room just for KCG.
Nicole and several witnesses testified that Nicole had conquered her drug problems and had been clean since 1993. However, for about four months, during the later part of her pregnancy, she admitted that she had not attended her A.A. or N.A. meetings. Since then, her attendance resumed.
Nicole admitted to some problems. She was behind on her child support, but was trying to catch up. Nicole testified that the Navy granted her a discharge in 1988 on the basis of a personality disorder. She told the Navy that she wanted to get out and had refused to continue training. According to Nicole, personality disorder was the term the Navy used for that type of problem.
Nicole is a high school graduate. She testified that she changed jobs six times in the last two to three years. She was not employed at the time of the hearing.
Mr. Mendoza had a college degree, and was employed. He was supportive of Nicole's attempts to gain custody.
Although Jody did not file any motions, he was represented by counsel, and testified at the hearing. Jody felt that the custody of KCG should be awarded to the Roberts.[1]
The trial court, in oral reasons, found that the grandparents met their burden to show by convincing evidence that it would be "detrimental" to the child to be in the custody of his mother or father. The trial court gave the following reasons:
1. The child had spent most of its life with the grandparents; and,

*783 2. Nicole had defects as a parent such that she could not provide a home for KCG that would not be detrimental to the child.
The trial court listed its concerns. The court felt that Nicole was unstable and immature. It found that she was promiscuous because she had lived with Jody. She fought with Mendoza, and the court did not think that the child should be exposed to such violent disputes. Nicole's drug use created a problem, even though she was not now using drugs. The trial court was concerned with the constant danger of relapse. The invalid marriage was not intentional, but would have to be straightened out before the court would consider awarding custody to Nicole. Nicole was discharged from the Navy for a personality disorder. She was behind in her child support.
On June 17, 1996, the trial court signed a judgment that awarded sole custody to the grandparents, Mr. and Mrs. Robert. Nicole was awarded visitation of every other weekend, alternate holidays, and two weeks in the summer. Nicole appealed.

LEGAL PRECEPTS
Parents have a paramount right of custody. They may be divested of that right only for compelling reasons shown by clear and convincing evidence. Rupert v. Swinford, 95-0395, p. 4 (La.App. 1st Cir. 10/6/95), 671 So.2d 502, 505; In re Custody of Landry, 95-0141, p. 5 (La.App. 1st Cir. 10/6/95), 662 So.2d 169,172. If a prior award of custody has been made by consent decree, the proponent for change must show that a material change in circumstances affecting the child's welfare has occurred since the last custody judgment before the court will consider a change in custody. Bergeron v. Bergeron, 492 So.2d 1193,1200 (La.1986); Millet v. Andrasko, 93-0520, p. 5-6 (La.App. 1st Cir. 3/11/94), 640 So.2d 368, 370-71. If a nonparent has been awarded custody, the parent moving for a change or modification must show a change in circumstances and that the change in custody would be in the best interest of the child. Millet, 93-0520, at p. 5-6, 640 So.2d at 371. However, if a nonparent moves for a change in parental custody, the Bergeron rule does not provide the standard for divestiture. The legislature has provided that standard or test in Civil Code article 133.
Thus, when a nonparent seeks to divest a parent of custody, the nonparent bears the burden of proof to show that parental custody "would result in substantial harm to the child." La. C.C. art. 133; Rupert v. Swinford, 95-0395, at p. 4 & 9, 671 So.2d at 505 & 507-508. The words "substantial harm" carry no magical connotation. "Detrimental" and "substantial harm" have been used interchangeably in the jurisprudence. See Matter of Tuccio, 95-0302, p. 6 (La.App. 1st Cir. 11/16/95), 665 So.2d 531, 534; Matter of Stewart, 602 So.2d 212, 214 (La.App. 3d Cir.1992); Pittman v. Jones, 559 So.2d 990, 993 (La.App. 4th Cir.), writ denied, 565 So.2d 451 (La.1990).
To divest a parent of custody based only on a finding of material change of circumstances and that an award to a nonparent was in the best interest of the child, would circumvent the paramount right of the parent to the child. The correct procedure for a divestiture, or a substantive modification of parental custody, is a threshold determination that a material change affecting the child's welfare has occurred. If the trial court finds in the affirmative, the court follows with a determination of whether continued parental custody would result in substantial harm to the child. See Rupert v. Swinford, 95-0395, at p. 3-4, 671 So.2d at 505.
To do otherwise would create a trap for the unwary. Nonparents would be relieved of the burden imposed by Civil Code article 133 in all future parent-nonparent disputes after the initial award of custody to the parents by consent decree. Article 133 would be eviscerated.
However, the best interest consideration is still applicable to the award of custody to a nonparent through present day Civil Code article 131. Article 131 requires the court to award "custody of a child in accordance with the best interest of the child." The best interest consideration applies to all custody awards. See La. C.C. art. 131, comment (a) *784 & (d). If divestiture or modification of parental custody is warranted under the article 133 test, custody is awarded in the best interest of the child in the following order of preference: to "another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment." La. C.C. arts. 133 & 131.
Upon appellate review, the determination of the trial court on custody is entitled to great weight. It will be overturned only when the trial court clearly abused its discretion. Blackledge v. Blackledge, 94-1568, p. 4 (La.App. 1st Cir. 3/3/95), 652 So.2d 593, 595.

APPLICATION OF LEGAL PRECEPTS AND ANALYSIS
The trial court found that maintenance of joint custody of the mother would be detrimental to the child. The issues are: (1) whether maintenance of the mother's joint custody would result in substantial harm to the child, and (2) if the trial court erred in divesting Nicole of custody, whether Nicole should be awarded sole custody or be given domiciliary status.

PARENTAL CUSTODY
The trial court divested Nicole of her parental custody because it found that parental custody would be detrimental to the child. The court apparently found that the Roberts alleged sufficient changes of circumstances materially affecting the child's welfare to place the issue of a change in Nicole's custody before the court. We disagree.
The record does not support the trial court's finding that Nicole's prior drug addiction rendered her a defective parent whose custody should be terminated. Nicole's former drug habit was known to the trial court and the parties before the award of joint custody to Nicole in 1994. The Navy discharge also predated the award of joint custody to Nicole. The evidence in the record does not support the trial court's concern that Nicole is any more subject to a relapse, than any other reformed alcoholic or addict. No one denied that Nicole was involved in a twelve step program and had been clean and sober since 1993.
We agree with the trial court's finding that the invalidity of Nicole's marriage was caused by an unintentional error by Mr. Mendoza. Nicole's affair with Jody, and her present relationship with Mr. Mendoza, do not support the trial court's finding that Nicole was promiscuous.
The heated disputes between Nicole and Mr. Mendoza are of concern. The need for law enforcement intervention suggested some immaturity and instability.
After reviewing the entire record, we find that the trial court abused its discretion in divesting Nicole of her joint custody. Many of the trial court's concerns about Nicole's suitability as a parent were known before the award of joint custody to Nicole in 1994. Based on the evidence in the record, the remaining concerns arguably do not meet the requirement of Bergeron. Even if the Roberts had met the threshold test of showing a material change in circumstances in Nicole's custody, they failed to show that "substantial harm" to the child would result from Nicole's continued joint custody. We reinstate Nicole's custody awarded in the 1994 judgment. However, sufficient changes had occurred to place the issue of Jody's custody before the court: that fact is uncontested.

CHANGE IN PARENTAL CUSTODY
However, the analysis and conclusion are different when considering whether to change the 1994 custody arrangement, and appoint Nicole as the sole or domiciliary custodian. Nicole must take responsibility for her prior life style choices and consent to the judgments that resulted in the child's residing with the grandparents for much of his life. She allowed the Roberts to step in during the first months of the child's life and take responsibility for the care of the child. She consented to the decrees rendered in 1992 and 1993, which awarded custody to Jody, and then the Roberts, respectively. She agreed to the consent judgment of August 29,1994, which awarded joint custody to Nicole and Jody, with Jody as domiciliary parent.
*785 All parties agreed that the child has bonded with the Roberts. The Roberts have consistently provided stability, financial support, and a good home for KCG for the majority of his life. The child has not resided with the mother since the child's first year.
The trial court rejected Nicole's request to appoint her as sole or domiciliary custodian. Among the trial court's concerns about Nicole were the new relationship with Mr. Mendoza that had periods of instability, the couple was not validly married, and Nicole was behind on her child support. The record shows that, at the time of the custody hearing, Nicole was not married, had no job, had given birth to a new baby, and was behind in the child support. We agree with the trial court's decision not to designate Nicole as the sole or domiciliary custodian. Nicole is not losing a status she previously enjoyed, but rather she is being denied her request for a modification of custody in her favor. Under the totality of the circumstances here, to modify the particulars of Nicole's joint custody or to change the child's primary residence, would result in substantial harm to the child.

AWARD OF CUSTODY TO GRANDPARENTS
It is apparent that Jody's relinquishment of his responsibilities for the child created a void in the 1994 custody structure. That void required some type of modification of custody. If the role of domiciliary parent could not be filled by Nicole at the time of the hearing, someone else had to be found to fill the void.
The record shows that the Roberts have provided a "wholesome and stable environment" throughout the majority of KCG's life. See La. C.C. art. 133. Based on the record, we find that the award to the Roberts of joint custody, with domiciliary status, would be in the best interest of the child. See La. C.C. art. 131; La. C.C. art. 133; Rupert v. Swinford, 95-0395, p. 3-9 (La.App. 1st Cir. 10/6/95), 671 So.2d 502, 505-08. Therefore, we award joint custody of KCG to Mr. and Mrs. David Robert, to be shared with Nicole. The Roberts are designated the domiciliary custodians.

VISITATION
In light of the void left by the father, it is in the best interest of the child to have more liberal visitation with his mother. At the time of the hearing, the child was enrolled in play school and was coming of age for full time school. However, the Roberts and Nicole lived in two different cities and parishes. For these reasons, the visitation awarded by the June 17, 1996 judgment is adopted, with the exception of the summer schedule. The visitation schedule in the 1996 judgment is amended to award Nicole Mother's Day and the first two weeks of every month during the summer.
The record suggests that on rare occasions, the Roberts have not fully supported and complied with Nicole's court ordered visitation rights. We admonish the Roberts not to interfere with, or try to avoid, Nicole's visitation.
We hope that the parties will always consider the best interest of the child, and not become involved in a battle for the love of the child. Most children, for their part, have plenty of love to go around. Victories in these battles hurt the child more than they help the adults. The parties do not have to agree on life styles or even like each other, but they do need to put the child first in their dealings with each other. We wish a court order could insure such actions. It cannot. It is up to the caretakers, parent and nonparent, to insure the stable and loving childhood that all children need.

CONCLUSION
For these reasons, we reverse the divestiture of Nicole's custody and reverse the award by the trial court of sole custody to the Roberts. We award joint custody to be shared between Nicole Ann Gaudet and Mr. and Mrs. Roberts. The Roberts are designated the domiciliary custodians. The visitation awarded in the June 17, 1996 judgment is amended to award Nicole the first two weeks of every month during the summer, that is, June, July, and August, and Mother's Day. The remainder of the visitation schedule is affirmed. The cost of the trial and the *786 appeal are assessed one-half to Ms. Gaudet and one-half to the Roberts. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Jody did not appeal the judgment of the trial court, which divested him of parental custody, or file a brief on appeal.