STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-492

GLYNN P. GREMILLION

VERSUS

ANITA GRIMES GREMILLION

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 04-6979 A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.

**REVERSED AND RENDERED IN PART;**
**REVERSED AND REMANDED IN PART;**
**AMENDED IN PART; AND AFFIRMED IN PART.**

Kenneth A. Doggett, Attorney at Law
P.O. Box 13498
Alexandria, LA 71315-3498
Counsel for Plaintiff-Appellant:
 Glynn P. Gremillion

Terry W. Lambright, Attorney at Law
100 South 3rd Street, Suite A
Leesville, LA 71446
Counsel for Defendant-Appellee:
 Anita Grimes Gremillion

**PAINTER, Judge.**

In this very contentious domestic dispute, both parties appeal different portions of the trial court's various judgments. Glynn P. Gremillion appeals the trial court's ruling regarding the valuation of his former wife's interest in the family home, the categorization of certain credit card debt as community debt, and the failure to recognize his claims for reimbursement for payments allegedly made on community debts following the filing of the petition for divorce. Anita Grimes Gremillion appeals the trial court's modification of the considered custody decree and several findings regarding the community property partition. For the reasons set forth below, we reverse that portion of the trial court's ruling which modifies the August 30, 2005 custody decree, and we also reverse the trial court's order that child support be set at zero and remand the matter for further determination as to child support. Furthermore, we affirm the trial court's finding that Glynn was not a partner in Gremillion Farms and that Anita, therefore, has no interest in that entity. However, we find that the trial court erred in not awarding Anita a one-sixth interest in both the $82,000.00 that Glynn removed from the feed mill account and the value of the corn held by the feed mill. We affirm the trial court's refusal to award Anita a one-half interest in the account in the name of Stanley Gremillion and its refusal to find that Glynn had accumulated at least $100,000.00 in cash that he kept in a file cabinet. Next, we amend the trial court's ruling to include an award of $9,746.09 to Anita, representing her one-half interest in the proceeds of the sale of the Leon Kimball House. We agree that the family residence was built on Glynn's separate property and, therefore, we amend the trial court's ruling with regard to Anita's interest therein to reflect that she is entitled to $30,184.54, representing one-half the value of the community funds used to construct the residence ($60,369.07) pursuant to La.Civ.

1

Code Art. 2366. We also reverse that portion of the trial court's ruling which ordered to Glynn to pay one-half of Anita's total credit card debt as we find that the majority of those charges were incurred after the dissolution of the community and, therefore, amend the trial court's ruling to reflect that Glynn is responsible for one-half of only $894.46 which represents the portion of the credit card debt that is classifiable as community debt. Finally, we amend the trial court's ruling to include a reimbursement to Glynn for $3,250.00, representing one-half of his attorney's fees incurred in obtaining the divorce.

## FACTUAL AND PROCEDURAL BACKGROUND

Glynn P. Gremillion and Anita Grimes Gremillion were married on July 8, 1995 in Leesville, Louisiana. They established their matrimonial domicile in Avoylles Parish. One child, Taylor Gremillion, was born during the marriage, on October 28, 1997. Glynn filed a petition for divorce on October 13, 2004, and the judgment of divorce was signed on June 13, 2005. A consent judgment as to custody was also signed on June 13, 2005. That judgment granted joint custody of the minor to the parties, with Anita being designated domiciliary parent and Glynn having specific visitation privileges. Glynn was also ordered to pay $634.00 per month in child support.

On August 30, 2005, following a trial on Glynn's petition for change of custody, the trial court signed a judgment granting joint custody to the parties, with Anita being designated as domiciliary parent and Glynn receiving additional specific visitation privileges. That judgment specifically states that it is a considered decree.

In the interim, the parties filed detailed descriptive lists, traversals of the other party's lists, rules for contempt, and various other pleadings regarding custody and

child support. Glynn was found in arrears for child support from November 2004 through August 16, 2006.

The present dispute arises, in part, out of a judgment on the partition of the community property and custody issues following a trial held on September 22, 2006. On October 9, 2006, the trial court issued its written reasons for ruling, finding that shared custody would be in the best interest of the child; that Glynn had no ownership interest in either Gremillion Farm or Gremillion Cattle, and therefore, any increase in value of those entities would have no effect on the community property issues; that Anita was entitled to one-sixth of the value in a Simmesport State Bank account for Gremillion Feed Mill, or $5,883.00; that Anita was entitled to one-half the equity in a motorcycle, or $3,557.50; that Anita was entitled to $62,500.00, characterized by the trial court as one-half of the funds used to build the home where the parties lived during the marriage; that there was no credibility in Anita's allegations that Glynn had a large amount of cash in a filing cabinet; that Anita was entitled to $23,820.00, representing one-half the amount of funds which were clearly and distinguishably community funds in the Valic account; that Anita was entitled to $500.00, representing one-half the value of a four-wheeler; that Anita was awarded possession and ownership of a Mercedes automobile, but must assume any and all debt associated therewith; that Anita was entitled to one-half of Glynn's personal bank funds; and that the credit card debt was community debt and, therefore, was to be split equally between the parties. In sum, Anita's interest in the community assets was determined to total $100,489.50. Judgment to that effect was signed on December 11, 2006. Both parties filed motions for new trial, which were denied. However, the trial court did amend the judgment to include an award of $5,895.00 to Anita for one-half interest in another automobile. In response to Glynn's rule to establish child support

3

and to remove Anita from his separate property, the trial court, at the same time, set child support at zero and ordered that that the parties equally divide all tuition and lunch expenses for the minor child, with Glynn being responsible for the 2006-2007 calendar year and the parties alternating each school year thereafter. The trial judge also ordered Anita to vacate Glynn's separate property, bearing municipal address of 3591 Highway 1182, Simmesport, Louisiana, no later than March 31, 2007. Anita was also ordered to continue to maintain major medical health insurance on the minor, with the parties dividing equally all out-of-pocket medical expenses and the cost of the child's portion of coverage. Judgment to that effect was signed March 6, 2007. Both parties then appealed to this court.

**DISCUSSION**

*Custody and Child Support*

The standard of review in child custody matters has been clearly stated by this court:

> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.

*Hawthorne v. Hawthorne*, 96-89, p. 12 (La. App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

However, Anita argues that the trial court applied the improper legal standard by simply ruling that a shared custody arrangement was in the best interest of the child and that she is entitled to a de novo review of the record as to the custody determination. We agree, and since the trial court committed legal error in applying the wrong burden of proof, we will perform a de novo review of this case. *See Arrington v. Campbell*, 04-1649 (La. App. 3 Cir. 3/9/05), 898 So.2d 611.

4

This court has recognized that:

> The burden of proof on a party seeking to modify a prior permanent custody award is dependent on the nature of the underlying custody award. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child.

*McCorvey v. McCorvey*, 05-174, pp. 18-19 (La. App. 3 Cir. 11/2/05), 916 So.2d 357, 370, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300. (Citations omitted.)

In *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986) (citations omitted), the Louisiana Supreme Court explicitly laid out the burden of proof for modification of child custody as follows:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

In this case, there is no doubt that the judgment awarding custody that Glynn sought to modify was a considered decree. Glynn, however, in brief, mentions only the consent judgment signed June 13, 2005. Glynn filed a petition for change of custody relative to that consent judgment, and after a hearing thereon where testimony was heard and evidence was received, the August 30, 2005 judgment was rendered. That judgment specifically states that it is a considered decree. Thus, we find that the trial court applied the wrong legal standard in changing the joint custody arrangement with Anita being the domiciliary parent to a shared custody arrangement with the parties sharing time equally on a week-to-week basis. The trial court specifically stated, in its written reasons for ruling, that it "favors shared custodies when it is otherwise in the best interest of the child." The court, however, was bound to apply the *Bergeron*

5

burden of proof. After a de novo review of the record, we find that Glynn did not meet the heavy burden of *Bergeron*.

The trial court apparently placed much weight on the testimony of Bernice Voiselle, a friend and neighbor of the Gremillion family, who has been the child's babysitter for some time. She was of the opinion that Glynn was more responsive to Taylor's needs and that Anita was always gone and did not attend to the child's everyday needs. However, a close reading of her testimony establishes that Glynn does not spend any more time attending to Taylor's everyday needs than does Anita. According to Ms. Voiselle, she is the child's primary caregiver. Ms. Voiselle's testimony was disputed by that of Anita and Anita's daughter, Madison Brouillette.

The trial court also considered the report of Dr. James Logan, the psychologist who evaluated the child and the parties. The trial court noted that Dr. Logan did not recommend that Glynn be given sole custody of Taylor but that Dr. Logan did not any way indicate that a shared custody arrangement would not be appropriate in this case.

The testimony is replete with inconsistencies about Taylor's care and whereabouts at any given moment. In sum, it is clear that Glynn did not meet the heavy burden required of him to change the considered custody decree in this matter. He simply did not prove that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree or present clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Therefore, the trial court erred in altering the custody decree, and we reverse that portion of the judgment. We hereby render judgment returning custody of Taylor to that outlined in the August 30, 2005 judgment.

Following the hearing on both parties' motions for new trial and Glynn's rule to establish child support, the trial court ordered child support fixed at zero. Child support had previously been fixed at $634.00 per month payable by Glynn. Glynn did file a rule for child support reduction prior to his being found in arrears for the period from November 2004 through August 16, 2006. Even though some limited testimony as to the amount of income of the parties and expenses associated with Taylor's care was taken, we are left to assume that the trial court fixed the amount at zero based on its decision to modify the custody arrangement. Because the record is incomplete in this regard, we remand the matter to trial court for determination of the amount of child support to be paid consistent with the return of Taylor's custody to that specified in the August 30, 2005 judgment.

*Community Property Issues*

We will address the community property issues in the order in which the trial court handled them in its written reasons for judgment. We will not discuss those matters to which neither party objects. We review these matters under the manifest error standard of review since the factual findings of the trial judge are in dispute. *See Young v. Young*, 06-77 (La.App. 3 Cir. 5/31/06), 931 So.2d 541.

A.    *Farm Accounts and Cottonport Bank Account*

Gremillion Farms, Gremillion Cattle, and Gremillion Feed Mill are three separate entities in which Glynn and his brothers participate. The trial court found that Glynn is one-third owner of Gremillion Feed Mill with his two brothers, Alden and Stanley. With respect to Gremillion Farms and Gremillion Cattle, the trial court found that the testimony and evidence established that Glynn had no ownership interest in either entity and was merely "compensated for his labor and industry which benefitted those two entities."

7

There is apparently no dispute as to the finding regarding Gremillion Cattle. However, Anita claims that the trial court erred in finding that Glynn was not a partner in Gremillion Farms and that she did not have an interest in a Simmesport State Bank account for Gremillion Farms, soybeans in storage, and farm equipment. We find no manifest error in the trial court's rulings and, therefore, affirm the trial court's rulings as to these issues.

Anita also alleges that trial court failed to include all of the assets and funds/money of Gremillion Feed Mill in its calculation of the community property. Specifically, Anita argues that she is entitled to a one-sixth interest in $82,000.00 which Glynn transferred from the Gremillion Feed Mill account for tax purposes and that she is entitled to a one-sixth interest in both the corn held by Gremillion Feed Mill and the grain tanks owned by Gremillion Feed Mill. With respect to the $82,000.00 and the corn, we agree. The testimony was clear that this was Feed Mill money. The testimony was also clear that the corn belonged to the feed mill and was valued at $13,000.00. Anita is entitled to one-sixth of both these amounts. With respect to the grain tanks, we agree with the trial court's refusal to award any interest therein to Anita. The testimony established that the grain tanks were owned by Gremillion Farms.

Anita next alleges that the trial court erred in failing to rule on or address the Cottonport Bank account. This account is in the name of Stanley Gremillion; however, Anita claims that Glynn is the only one using the account and that it was set up in attempt by Glynn to hide money from her. We note that the amount withdrawn by Glynn from the Valic account is accounted for in the total value of that account; therefore, we find no error in the trial court's refusal to award Anita any interest in this account.

8

*B.    Cash*

Anita contends that the trial court erred in refusing to find that Glynn had accumulated at least $100,000.00 in cash that he kept in a file cabinet and in not awarding her one-half of that amount. Anita and Madison testified that they found a large amount of cash in a file drawer. There was much discrepancy about who counted the cash and as to how much cash was actually counted in Anita's trial and deposition testimonies. The trial court found that Madison's testimony was "rehearsed, scripted, and robotic in her description of finding and counting the money." We agree with the trial court that "taken as a whole, there is no credibility toward the allegations of finding cash in a filing cabinet." Therefore, we find Anita's assignment of error in this regard to be without merit and affirm the trial court's ruling.

*C.    Leon Kimball House*

Finally, Anita alleges that the trial court erred in refusing to award her $9,746.09 in connection with the sale of the Leon Kimball house. This real estate was owned by Glynn prior to his marriage to Anita. The parties agreed, at trial, that the profit from the sale of the Leon Kimball house was $19,492.17 and that this amount was community property. Therefore, we find that the trial judge manifestly erred in refusing to award Anita one-half of that amount. The judgment is amended to include an award of $9,746.09 as her one-half interest in the proceeds of the sale of the Leon Kimball house.

*D.    Family Residence*

Glynn contends that the parties used community funds to construct a residence on land owned by Glynn which was his separate property. Glynn contends that Anita should receive only one-half the the value of the community assets used to build the

9

home. Anita, on the other hand, contends that the land upon which the house was built was community property and that she is entitled to one-half the current value of the home and land.

Louisiana Civil Code Article 493 concerns the ownership of improvements and provides, in pertinent part:

> When buildings, other constructions permanently attached to the ground, or plantings are made on the separate property *of a spouse* with community assets or with separate assets of the other spouse and when such improvements are made on community property with the separate assets of a spouse, this Article does not apply. The rights of the spouses are governed by Articles 2366, 2367, and 2367.1.

(Emphasis added.)

Louisiana Civil Code Article 2366 provides:

> If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
>
> Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.

In its written reasons for judgment, the trial court's reasoning makes clear that it determined that the family home was built on land which was Glynn's separate property. The trial court then ruled that Anita was entitled to one-half of the funds used to build the home, or $62,500.00. However, the amount awarded by the trial court appears to be one-half the present value of the home, which is $133,000.00.

The land on which the home was built was donated to Glynn by his brother, Alden. At some point during the marriage, Glynn donated the land back to Alden. Anita testified that she believed Glynn was buying the land from his brother for

10

$3,000.00 and that she knew nothing of the donation back to Glynn's brother. The trial judge did not find Anita to be a very credible witness.

The trial court's findings regarding the nature of the property as community or separate are factual determinations which are governed by the manifest error standard of review. *Young v. Young*, 06-77 (La. App. 3 Cir. 5/31/06), 931 So.2d 541. We find no manifest error in the trial court's determination that this land was Glynn's separate property. However, we do find error in the trial court's application of *Lormand v. Lormand*, 96-62 (La. App. 3 Cir. 5/8/96), 673 So.2d 1345, *writ denied*, 96-1432 (La. 9/13/96), 679 So.2d 109. In the *Lormand* case, at the time the family home was built, the land was owned by the husband's adoptive parents. At the time of the trial on the community property issues, the parents had died, leaving Mr. Lormand as their sole heir. Mr. Lormand argued that the provisions of La.Civ. Code art. 2366, rather than La.Civ. Code art. 493 should apply. This court disagreed and found that Ms. Lormand was entitled to one-half the fair market value of the house under art. 493 rather than being limited to one-half the value the community assets had at the time they were used. The trial court failed to recognize the distinction in *Lormand* that the property was not owned by either of the spouses at the time the house was built. Thus, the case at bar is distinguishable from *Lormand*, and the holding in *Lormand* is inapplicable in a case where the property is owned by one of the spouses at the time of the construction. In such a case, art. 493 is clear that "[t]he rights of the spouses are governed by Articles 2366, 2367, and 2367.1." Thus, we find that trial court erred in awarding one-half of the fair market value of the home to Anita. We reverse that portion of the judgment and render judgment awarding Anita $30,184.54, representing one-half the value of the community funds used to construct the

11

residence ($60,369.07). Furthermore, we affirm the trial court's order for Anita to vacate the premises.

### E. Credit Cards

The trial court's judgment ordered that the parties divide all credit cards where a balance remained at the time of the dissolution of their matrimonial regime on October 13, 2004. Glynn contends that Anita did not prove that the credit card balance on an account in her name was a community debt. Anita contends that there is a presumption of community and that the record reflects that the balances were due and payable during the marriage.

The record contains only a copy of an MBNA America credit card statement, dated November 19, 2004, in the name of Anita G. Gremillion, showing a balance due of $4,353.17 and a November 9, 2004 payment of $2,000.00. All of the current charges, totaling $3,458.71, were incurred *after* Glynn filed the petition for divorce on October 13, 2004.

Louisiana Civil Code Article 159 provides:

> A judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered. The retroactive termination of the community shall be without prejudice to rights of third parties validly acquired in the interim between the filing of the petition and recordation of the judgment.

Thus, the $3,458.71 in charges listed on the statement at issue are not presumed to be community debt. Only $894.46 is presumed to be community debt. We find nothing in the record to support Anita's assertion that the current charges of $3,458.71 were community debt. Thus, we find the trial court erred in assessing one-half of the total debt to Glynn and amend the judgment to reflect that Glynn is responsible for one-half of only $894.46, which represents the portion of the credit card debt that is classifiable as community debt.

12

*F.    Reimbursements*

Glynn further complains that the trial court erred in refusing to award him any reimbursement for $1,922.00 paid towards the Mercedes vehicle note and for one-half of his attorney's fees incurred in getting the divorce. Anita contends that Glynn is not due any reimbursement for the Mercedes note payment because he had previously failed to pay his half of the note as ordered by the trial court. We find no error in the trial court's refusal to grant a reimbursement for the $1,922.00 paid towards the Mercedes vehicle note.

With respect to the attorney's fee issue, however, La.Civ. Code art. 2362.1 provides that: "An obligation for attorney's fees and costs in an action for divorce incurred before the date of the judgment of divorce that terminates the community property regime is a community obligation of that regime." Thus, the trial court erred in refusing to grant a reimbursement of $3,250.00 to Glynn.

**DECREE**

For the foregoing reasons, we reverse that portion of the trial court's judgment which modifies the August 30, 2005 custody decree and re-instate the custody decree set forth therein. We reverse that portion of the judgment fixing child support at zero and remand the matter for a determination as to the amount of child support to be paid consistent with the return of Taylor's custody to that specified in the August 30, 2005 judgment. Furthermore, we affirm the trial court's finding that Glynn was not a partner in Gremillion Farms and that, as a result, Anita has no interest in that entity. However, we find that the trial court erred in not awarding Anita a one-sixth interest in the $82,000.00 that Glynn removed from the Gremillion Feed Mill account and a one-sixth interest in the corn held by Gremillion Feed Mill and amend the judgment to reflect Anita's interests in those regards. We affirm the trial court's refusal to

13

award Anita a one-half interest in the account in the name of Stanley Gremillion and its refusal to find that Glynn had accumulated at least $100,000.00 in cash that he kept in a file cabinet. Next, we amend the trial court's judgment to include an award of $9,746.09 to Anita representing her one-half interest in the proceeds of the sale of the Leon Kimball House. We agree that the family residence was built on Glynn's separate property and, therefore, we amend the trial court's ruling with regard to Anita's interest therein to reflect that she is entitled to $30,184.54, representing one-half the value of the community funds used to construct the residence ($60,369.07), pursuant to La.Civ. Code art. 2366. We also reverse that portion of the trial court judgment which ordered Glynn to pay one-half of Anita's total credit card debt as we find that the majority of those charges were incurred after the dissolution of the community and amend the judgment to reflect that Glynn is responsible for one-half of only $894.46, which represents the portion of the credit card debt that is classifiable as community debt. Finally, we amend the judgment to include a reimbursement to Glynn for $3,250.00, representing one-half of his attorney's fees in obtaining the divorce. Costs of this appeal are assessed equally to Plaintiff-Appellant, Glynn P. Gremillion, and to Defendant-Appellee, Anita Grimes Gremillion.

**REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; AMENDED IN PART; AND AFFIRMED IN PART.**

14