# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-524


**HERBERT AND MARTHA DALME**

**VERSUS**

**LEAH DALME, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-77,213, DIV. B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

**Peters, J., dissents with written reasons.**


**AFFIRMED.**

**Henry Howard Lemoine  Jr.**
**Howell D. Jones**
**Lemoine & Wampler**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**Counsel for Defendant/Appellant:**
**Eric Stoker**

**Richard Emile deVargas**
**Attorney At Law**
**506 Front St.**
**Natchitoches, LA 71457**
**(318) 354-8222**
**Counsel for Defendant/Appellee:**
**Leah Dalme**


 **Richard Bray Williams**
**Williams Family Law Firm, L.L.C.**
**P. O. Box 15**
**Natchitoches, LA 71458-0015**
**(318) 352-6695**
**Counsel for Plaintiffs/Appellees:**
**Herbert and Martha Dalme**

**SAUNDERS, Judge.**

This is a custody case in which the defendant, Eric Stoker (hereinafter "Appellant"), appeals the trial court's denial of his request for a change in custody of his minor child pursuant to a rule for modification of custody and visitation after two consent custody decrees.

For the following reasons, we affirm the trial court's denial of the request for modification of custody.

**FACTS AND PROCEDURAL HISTORY**

On July 30, 2004, Herbert and Martha Dalme (hereinafter "Appellees") sought custody of their ten-month-old grandchild, Bayli Rechelle Dalme Stoker (hereinafter "Bayli"). Immediate temporary custody was granted to Appellees by way of an *ex parte* order, with a hearing set for August 20, 2004.

At the August 20, 2004 hearing, the parties entered into a consent custody agreement. Joint custody of Bayli was awarded to Appellees and Appellant with the Appellees being granted domiciliary custody. Appellant was granted reasonable, supervised visitation on alternating weekends and holidays.

Appellant and the minor child's mother, Leah Dalme (hereinafter "Leah"), were subsequently married in October of 2004, establishing a matrimonial domicile in Sabine Parish. They separated in November of 2005 and were granted a divorce in Avoyelles Parish in August of 2006. Custody of Bayli was not an issue in the divorce proceeding.

On November 2, 2006, Appellant filed a rule to modify custody in Avoyelles Parish, seeking to be named domiciliary custodian. Appellees and Leah were named as defendants. After a successful declinatory exception of improper venue by the Appellees, the case was transferred to Natchitoches Parish. A second consent custody

agreement was reached on August 29, 2007, with a consent custody judgment signed on October 3, 2007.

The October 3, 2007 judgment again awarded joint custody of the minor child to Appellees and Appellant. Appellees retained their status as domiciliary custodians, while Appellant was now given additional reasonable, liberal, and unsupervised visitation rights.

Nearly six months later, on March 24, 2008, Appellant again filed a rule for modification of custody and visitation seeking to be named domiciliary custodian. The Appellant's request for modification of custody was denied by the trial court.

FACTS

Bayli was born on September 3, 2003, and has primarily resided with Appellees, her maternal grandparents, since her birth. Leah lived with Appellees after the birth of Bayli and until such time as her arrest on drug charges in 2004. Bayli continued to live with Appellees even after the marriage of her parents, Appellant and Leah, in August of 2004.

Appellant pled guilty to simple burglary in 2001 and was placed on three years supervised probation. He violated his probation in March of 2002, thus resulting in his probation being extended. The most recent of numerous other charges against Appellant resulted in a September 2005 conviction for possession with intent to distribute a Schedule II drug. He was sentenced to five years suspended sentence with three years supervised probation. In March of 2005, Appellant entered into the Teen Challenge faith-based drug rehabilitation program, which he successfully completed. He has not obtained any drug counseling or attended any rehabilitation meetings since completing Teen Challenge.

2

Appellees have encouraged a continuing relationship between Bayli and Appellant and have not done anything to discourage such a relationship.

Appellant has appealed the trial court's denial of modification of custody and has alleged the following assignment of error:

**APPELLANT'S ASSIGNMENT OF ERROR:**

The Trial Court erred by failing to find a change in circumstances and by granting custody of Bayli to her grandparents instead of a parent.

**LAW AND DISCUSSION OF THE MERITS:**

We have been asked to review the trial court's denial of Appellant's request to modify a consent custody agreement pertaining to a minor child. It is significant that there have been two custody decrees on this matter and that both of them have been consented to by Appellant. This court has noted that such agreements may only be modified when there is a showing that there has been a material change in circumstances and that the modification would be in the best interest of the minor child.

> If a prior award of custody has been made by consent decree, the proponent for change must show that a material change in circumstances affecting the child's welfare has occurred since the last custody judgment before the court will consider a change in custody. *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986); *Millet v. Andrasko*, 93-0520, p. 5-6 (La.App. 1st Cir. 3/11/94), 640 So.2d 368, 370-71. If a nonparent has been awarded custody, the parent moving for a change or modification must show a change in circumstances and that the change in custody would be in the best interest of the child. *Millet*, 93-0520, at p. 5-6, 640 So.2d at 371.

*Matter of Landrum*, 97-826, p. 4 (La. App. 3 Cir. 12/10/97), 704 So.2d 872, 874 (quoting *Robert v. Gaudet*, 96-2506, p. 6 (La.App. 1 Cir. 3/27/97), 691 So.2d 780, 783).

STANDARD OF REVIEW

3

This court has previously held in *Gremillion v. Gremillion*, 07-492 (La.App. 3 Cir. 10/03/07), 966 So.2d 1228, that a trial court's determination in a child custody case is entitled to great weight and should not be disturbed absent a showing that there was a clear abuse of discretion on the part of the trial judge.

> The standard of review in child custody matters has been clearly stated by this court:
>
>> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion. *Hawthorne v. Hawthorne*, 96-89, p. 12 (La. App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

*Id*. at 1231-1232 (quoting *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365).

## DISCUSSION OF APPLICABLE LAW

Appellant has urged that a material change in circumstances has occurred in that he has completed substance abuse treatment through the Teen Challenge program. He asserts that he has been sober for three years and has now become a worthy father as a reformed man.

While this court commends Appellant's efforts at bettering his health and livelihood and encourages Appellant to remain motivated in continuing on this brighter path, it must acknowledge that this absence of illegal activity falls short of the requirements this court has demanded to satisfy a material change in circumstances.

We note that at the time of the second consent decree in October of 2007, Appellant had already been two years removed from the treatment that he claims

cured him of his addictions. The next step in the logical progression is to ask what material change in circumstance has occurred since that time. It appears that Appellant has merely tacked additional time onto his continued sobriety. He is asking us to consider the dearth of a stumble on his part as a material change in circumstances.

Appellant argues that the holding set forth in *Richardson v. Richardson*, 07-0430 (La.App. 4 Cir. 12/28/07), 974 So.2d 761, applies to this case. The court in *Richardson* held that a material change in circumstances existed when a father engaged in the continued use of cocaine over a one and a half year period. Appellant contends that this principle applies by analogy–that his abstention from drug use for a period of time similarly amounts to a material change in circumstances. We do not agree. Appellant has merely acted in conformity with the expectations placed on him by society and the legal system.

While it is evident that Mr. Stoker has made changes in his own life since his last arrest, there have been no material changes in circumstances since the time of the last consent judgment that would justify a modification of custody, as the changes referred to do not have an effect on the welfare of the child. All that has transpired is Mr. Stoker's continued disuse of drugs. While Appellant should be proud of his achievement and while a longer period of compliance may ultimately be adequate to meet his burden of proof, his mere obedience to the law for a period of six months since the last adjudication is not enough to lead us to find that the trial court abused its considerable discretion in determining whether there was a material change of circumstances in this matter.

It has been argued that the jurisprudence applied in this case stands in contrast

5

to Louisiana Civil Code Article 133:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

The article recognizes the parent's paramount right to custody of the child and applies a heavier burden than that required in modifying a consent decree–thus presenting two distinct standards that could be applied in the present matter. We find, however, that the same result should be reached under both tests. So long as awarding custody to the parent would be detrimental to the child and awarding custody to the non-parent would serve the child's best interests, an award of custody to the Appellees would be appropriate in this case. *Creed v. Creed*, 94-268, (La.App. 3 Cir. 12/21/94), 647 So.2d 1362. We find that it is. At the time of the first consent decree, it was clear that it would have been to Bayli's detriment to have been placed in the custody of the Appellant–considering his drug use and other illegal behavior. The Appellant has taken steps to rehabilitate himself. Rehabilitation could be considered a material change in circumstances which would allow him to meet his burden of proof. The question of whether the Appellant's rehabilitation has progressed to a point that it may be considered a material change in circumstances is a fact driven inquiry. We read the trial court opinion to be a finding that his rehabilitation has not yet reached that point. For these reasons, we find that there was no clear abuse of discretion on the part of the trial court.

**CONCLUSION:**

Appellant has been unable to show that there was a clear abuse of discretion on the part of the trial court in determining that there was no material change in

circumstances since the time of the last consent judgment in this matter. Therefore, we affirm the underlying judgment with a reservation of the right of the Appellant to seek modification of the present custodial arrangement upon satisfactory proof, with competent evidence, of his successful rehabilitation and ability to regain parental custody of his child. All costs of this proceeding are to be paid by Appellant.

**AFFIRMED**.

# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-0524

**HEBERT AND MARTHA DALME**

**VERSUS**

**LEAH DALME, ET AL.**

PETERS, J., dissenting.

If the dispute in this matter were between the mother and father of the minor child at issue, I would be in complete agreement with the majority opinion. However, the effect of the majority opinion is to elevate the non-parent litigants to the status of parents and effectively preclude the natural father from ever being able to reclaim custody of his minor child. For the reasons that follow, I find that the trial court erred, not only in maintaining the grandparents as custodial parents, but in its initial award of domiciliary custody to the grandparents as well.

The whole problem with non-parents initiating proceedings to obtain custody of a minor child is that there exists no procedural authority under Louisiana law for such a direct challenge by a non-parent to the long recognized paramount right of a parent to custody of his or her child. In this case, the grandparents, not the parents, instituted the custody litigation.

Custody of minor children is first addressed in Section 3 of Title V of the Louisiana Civil Code. That Section begins with La.Civ.Code art. 131, which simply provides that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." It is only when parental custody "would result in substantial harm to the child" that non-parent custody is even considered. La.Code Civ.P. art. 133. Custody of illegitimate children is governed by the same rules. La.Code Civ.P. art. 245.

Thus, the Louisiana Civil Code provides that the only instance where a non-parent may become involved in a custody matter is by application of La.Civ.Code art. 133. Pursuant to this article, a non-parent's involvement is contingent on the parents raising the issue in a prior custody proceeding. Even then, the non-parent's right arises only if the trial court determines that parental custody would result in substantial harm to the child and that it is in the best interest of the child that custody be granted to a non-parent.

The fact that non-parents, and specifically grandparents, do not have the right to institute custody proceedings does not leave them powerless to protect minor children in whom they have an interest. In fact the Child in Need of Care provisions of the Louisiana Children's Code directly provide the relief that was needed in July of 2004, and does so without elevating a non-parent to parent status. Louisiana Children's Code Article 601 provides in pertinent part:

> The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts.

The Article further states that proceedings under the Child in Need of Care provisions "shall be conducted expeditiously *to avoid delays in achieving permanency for children*." *Id.* (Emphasis added). This is clearly the better alternative to a judicially created right of action to non-parents for physical custody. In fact, in the matter before us, it would have eliminated the very delays and roadblocks built into this litigation that deprive a parent of the right to receive consideration of rehabilitation efforts that might not change a prior order of custody to the other parent, but certainly should have more weight in a dispute between the parent and a non-parent.

2

I would dispose of this matter, pursuant to the authority found in La.Code Civ.P. art. 927(B), by finding that the non-parent plaintiffs had no right to bring this action in the first place.[1] If the grandparents felt a need to continue to pursue a means of protecting their grandchild, the provisions of the Louisiana Children's Code would be immediately available. If, as the grandmother testified, the real purpose of maintaining custody is to effect an ultimate transfer of custody to her daughter, this dismissal would also have the effect of placing the mother and father on equal footing and eliminate the current advantage of the mother.

Even assuming that a non-parent has a right to bring a custody action against the parents of a child, I disagree with the majority's affirmation of the trial court's judgment continuing domiciliary custody in the grandparents. The trial court found that because the first two times the custody issue was addressed resulted in consent decrees, the father was required to establish a material change of circumstances and that the transfer of domiciliary custody to him was in the best interest of the child before the trial court could change the consent decree. In other words, the father was relegated to the same burden in a proceeding against a non-parent as he would have had against the mother of the child. As previously stated, this elevates the non-parent to the status of parent. Such a holding flies in the face of the parental preference rule.

It is axiomatic that a parent has a paramount right to the custody of his or her child. *Creed v. Creed*, 94-286 (La.App. 3 Cir. 12/21/94), 647 So.2d 1362. As stated in that opinion,

> [T]he party moving that someone other than the parent have custody has the burden of proving that the parent or parents are unfit and that substantial harm would result to the children. Secondly, Louisiana Civil Code article 131 (formerly La.Civ.Code art. 146) and the jurisprudence

---

[1] I recognize that many reported cases involve non-parents as the initial plaintiffs in custody disputes. However, in the vast majority of these cases, the right of action issue never arose. (But see the dissent in *Williams v. Boone*, 99-106 (La.App. 3 Cir. 5/19/99), 733 So.2d 1257).

3

interpreting it establishes a two prong test before the trial court can grant custody to a non-parent: the trial court must find that an award of custody to the parent would be detrimental to the child or result in substantial harm and that the award of custody to a non-parent is required to serve the best interests of the child. Lastly, the burden is a "strict one" in which the non-parent seeking custody must show "compelling reasons by convincing proof" that custody to the parent would result in substantial harm.

*Id.* at 1365 (citation omitted).

This court recently reaffirmed the views expressed in *Creed* in *Whitman v. Williams*, 08-1133, p. 2 (La.App. 3 Cir. 2/4/09), 6 So.3d 852, 853:

> We are mindful that the "concept of parental primacy is well established in Louisiana law" and that a nonparent is "required to make a very strong showing before custody should be awarded in their favor." *Wilson v. Paul*, 08-382, p. 2 (La.App. 3 Cir. 10/1/08), 997 So.2d 572, 574. Furthermore, "[i]n a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons." *Id.* (quoting *Tennessee v. Campbell*, 28,823, p. 6 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274, 1278). As such, the nonparent bears the burden of proving that "granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent." *Id.* (quoting *Tennessee*, 682 So.2d at 1278).

Thus, in order for the grandparents to gain custody of the minor child, they must satisfy the two prong test set out in La.Civ.Code art. 133. They must prove by clear and convincing evidence that a parent's custody of his or her own child will cause substantial harm and that the best interest of the child necessitates custody in their favor. The plaintiffs in this case were far from successful in satisfying that burden.

The child's grandmother testified initially that she and her husband intended to maintain custody only until the parent or parents rehabilitated themselves. In other words, there was never an attempt to obtain "permanent custody." They were simply trying to protect their granddaughter from her struggling parents. On the one hand, the grandmother testified that the father has cooperated in every way possible, has been clean of substance abuse for a significant period, and has proven himself to be

4

a good and loving parent. On the other hand, she objected to allowing him the opportunity to raise his own child solely because she believes drug addition is "for life," and, therefore, he "might" relapse in the future. This was the extent of the evidence on the father's fitness.

When recalled to the stand later in the trial, the grandparents' true motivation came to the surface. When questioned about her daughter's position in this matter,[2] the grandmother made it perfectly clear that she would never consent to custody by the father because she was waiting for her daughter to seek custody and had every intention of helping her in every way to obtain custody. This position was expressed despite the fact that the child's mother had the same drug addiction as did the father. Suddenly, addiction "for life" and the fear of relapse in the future became of less importance.

I find, as did our brethren in the first circuit in *Robert v. Gaudet*, 96-2506, (La.App. 1 Cir. 3/27/97), 691 So.2d 780, that a consent judgment does not alter the non-parents' obligation to establish the two-fold burden of La.Code Civ.P. art. 133.

> To divest a parent of custody based *only* on a finding of material change of circumstances and that an award to a nonparent was in the best interest of the child, would circumvent the paramount right of the parent to the child. The correct procedure for a divestiture, or a substantive modification of parental custody, is the threshold determination that a material change affecting the child's welfare has occurred. If the trial court finds in the affirmative, the court follows with a determination of whether continued parental custody would result in substantial harm to the child. *See Rupert v. Swinford*, 95-0359, at p. 3-4 [La.App. 1 Cir. 10/6/95], 671 So.2d [502,] 505.

> To do otherwise would create a trap for the unwary. Nonparents would be relieved of the burden imposed by Civil Code article 133 in all future parent-nonparent disputes after the initial award of custody to the parents by consent decree. Article 133 would be eviscerated.

*Id.* at 783 (emphasis in original).

---

[2]The daughter has never brought any action for return of custody.

Thus, in the hearing we are reviewing, the burden of proof remained with the grandparents despite the two previous consent judgments between the parties. It bears stating again that to allow the grandparents to rely on the lesser burden of proof employed in proceedings between parents seeking modification of a non-considered decree would effectively elevate them to the status of parents. Divestiture of a parent's paramount right to custody occurs only upon a showing of compelling reasons by convincing proof. *Creed*, 674 So.2d 1362.

Certainly, the grandparents are to be commended for stepping in and protecting their granddaughter in her time of need. However, we should not judicially create a situation where parents who have made mistakes and learned from those mistakes are precluded from raising their children. To do so destroys the long-recognized paramount right of parents to raise their children. This case is a prime example of a situation that starts with good intentions, and, if the non-parents are not held to the stringent burden of proof, will result in a father losing his opportunity to raise his child—not because of the mother's actions, but because of a non-parent who instituted an action not sanctioned by our procedure law. I would reverse and award the father custody, finding that the grandparents failed in their burden of proof.