# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-1465

**KIMBERLEE CORIANNE BLACK**

**VERSUS**

**KIMBERLY RENAE SIMMS**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-3090
HONORABLE GUY ERNEST BRADBERRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**Cooks, J.**, concurs with written reasons.

**AFFIRMED.**

**Joseph L. McReynolds
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, LA 70130-3672
(504) 581-5141
Counsel for Plaintiff/Appellant:
Kimberlee Corianne Black**

**Walter Marshall Sanchez**
**Sanchez Law Firm**
**901 Lakeshore Drive, Suite 1050**
**Lake Charles, LA 70601**
**(337) 433-4405**
**Counsel for Defendant/Appellee:**
**Kimberly Renae Simms**

**Michelle D. Bradley**
**1505 Common Street**
**Lake Charles, LA 70601**
**(337) 990-0046**
**Counsel for Plaintiff/Appellant:**
**Kimberlee Corianne Black**

**EZELL, JUDGE.**

Kimberlee Black filed a petition seeking sole custody, or in the alternative, joint custody with reasonable visitation of Braelyn Simms. Braelyn is the biological daughter of Kimberly Simms. Ms. Black appeals the granting by the trial court of a involuntary dismissal of her case finding that she failed to meet her burden of proof under La.Civ.Code art. 133.

## FACTS

Ms. Black and Ms. Simms were an unmarried, same-sex couple living in Shreveport. After artificial insemination, Ms. Simms gave birth to Braelyn on January 29, 2000. Subsequently, using the same sperm donor, Ms. Black gave birth to Eli Black on May 1, 2002.

The couple began experiencing problems, and in 2004, Ms. Simms moved out. Initially, she moved in with her brother in Texas. However, she realized she could not be around her family due to issues she had with her father when she was young, so she moved in with Ms. Black and her parents, Sheri and Robert. Ms. Black's parents were very active in helping with the children. During that time, Ms. Simms and Braelyn lived upstairs at the Black home until she left again in February 2006. Ms. Simms became involved with another woman and moved to Lake Charles to be with her.

Initially, there were some weekends in which the Blacks would meet Ms. Simms halfway and take Braelyn for the weekend. However, it appears that emotions continued to run high, and in May 2006, there was a confrontation between all parties when Ms. Simms went to Shreveport to pick up Braelyn at the Blacks' home. After that incident, Ms. Black did not see Braelyn again.

1

On June 1, 2007, Ms. Black filed an ex parte petition for custody of Braelyn. Affidavits referring to the events in May 2006 were attached but failed to include the year. Braelyn was taken from Ms. Simms' home by Calcasieu Parish deputies. A stipulation was entered at a hearing on June 19, 2007, in which custody of Braelyn was returned to Ms. Simms. Ms. Simms was also ordered to let Braelyn call Ms. Black on Wednesday nights and talk to her for fifteen minutes. A mental health evaluation was also ordered to determine if it was in Braelyn's best interest to be allowed access to the Blacks and Eli.

A hearing on the custody petition was held on July 9 and 10, 2008. At the close of Ms. Black's presentation of evidence, Ms. Simms moved for an involuntary dismissal. Finding that Ms. Black failed to proved that substantial harm would come to Braelyn if she continued in the current custody situation with Ms. Simms, the trial court granted the involuntary dismissal. It is from this ruling that Ms. Black appeals.

## LOUISIANA CIVIL CODE ARTICLE 133

Ms. Black first argues that the trial court erred by holding her to a higher burden of proof under Article 133, i.e. that sole custody of the legal parent would cause substantial harm to the child when this court has held that joint custody awards between parent and non-parents are governed by La.Civ.Code arts. 131 and 134. Ms. Black cites the cases of *Matter of Landrum*, 97-826 (La.App. 3 Cir. 12/10/97), 704 So.2d 872, and *Williams v. Boone*, 99-106 (La.App. Cir. 5/19/99), 733 So.2d 1257, which held that the "substantial harm" burden of proof of Article 133 does not apply when joint custody is awarded to a parent and non-parent. For the following reasons, we respectfully disagree with those panels of this court.

Louisiana Civil Code Article 133 provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award

2

custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

*Landrum*, 704 So.2d 872, relied heavily on the first circuit cases of *Rupert v. Swinford*, 95-395 (La.App. 1 Cir. 10/6/95), 671 So.2d 502, and *Robert v. Gaudet*, 96-2506 (La.App. 1 Cir. 3/27/97), 691 So.2d 780. Specifically, in *Rupert*, 671 So.2d at 504, the first circuit determined that an award of joint custody to the father and a grandparent would first require the court to find "that joint custody to the mother and father would result in substantial harm to [the child], that sole custody to the mother would result in substantial harm to [the child], and that sole custody to the father would result in substantial harm to [the child]." The first circuit then went on to hold that under Article 133, "a finding that an award of sole custody to a parent would result in substantial harm to the child does not preclude that parent from being considered in a joint custody award with a non-parent." *Id.* at 505.

In *Landrum*, 704 So.2d 872, this court jumped to the conclusion that the language of Article 133 is inapplicable when a parent is awarded joint custody with a non-parent. This is not what *Rupert*, 671 So.2d 502, held. It must first be determined that an award of sole custody to the parent would result in substantial harm to the child. Comment (b) to Article 133 explains that the heavier burden is "an efficient means of giving effect to a parent's paramount right to custody of his child as against any non-parent." Otherwise, non-parents are placed on the same footing as parents when seeking joint custody if we were simply to apply the "best interests" standard set forth in Articles 131 and 134.

As further explained by the first circuit, even though a court may determine that an award of sole custody to a parent would result in substantial harm, the parent is not precluded from being considered in a joint custody award with a non-parent. *Rupert*,

3

671 So.2d 502. *Rupert* relied on Comment (c) to Article 133 and *Schloegel v. Schloegel*, 584 So.2d 344 (La.App. 4 Cir. 1991), which awarded joint custody to a father and maternal grandmother after it was determined that an award of sole custody to the father was detrimental to the child's welfare.[1] See also *Smith v. Tierney*, 04-2482 (La.App. 1 Cir. 2/16/05), 906 So.2d 586, where the first circuit held that the trial court erred in awarding sole custody to the paternal grandparents when there was no evidence that the mother should be divested of all of her custody rights of the child. The first circuit did find that substantial harm would result to the child if the mother had sole custody and awarded joint custody between the mother and the paternal grandparents.

This finding is further supported by Comment (a) to Article 133 which provides that the redundant dual test for divesting a parent of custody of his or her child is still applicable. The redundant dual test is a dual-pronged test. *Lions v. Lions*, 488 So.2d 445 (La.App. 3 Cir. 1986). First, before a trial court deprives a parent of the custody of his or her child, the trial court must first determine that an award of custody would cause substantial harm to the child. If so, then the courts look at the best interest of the child factors in Article 134 to determine if an award of custody to a non-parent is required to serve the best interest of the child. *Wilson v. Paul*, 08-382 (La.App. 3 Cir. 10/1/08), 997 So.2d 572 (citing *Tennessee v. Campbell*, 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274).

Ms. Black has also argued that the legislature has been silent on the issue of children of gay and lesbian relationships, so this court must act in equity to protect the rights of these children. While we agree that there are no laws governing these

---

[1] Acts 1993, No. 261, § 1, effective January 1, 1994, amended former La.Civ.Code art. 131(B) and reenacted it as Article 133. The substance of Article 133 was formerly found in La.Civ.Code art. 146(B), which was in effect from January 1, 1983, until December 31, 1990. Former Article 146 provided that a non-parent had to prove that parental custody be shown to be "deterimental" to the child.

4

type of relationships, we also observe that there are no laws governing heterosexual relationships in which only one of the parties is the biological parent. Any non-parent who has a relationship with a biological parent and develops a relationship with the child has to meet the same standard in establishing a basis for custody of the child. This includes grandparents and step parents.

*Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000), recognized the special liberty interest of parents in the care, custody, and control of their children as one of the oldest of the fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that:

> [S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

Id. at 2061; 68.

Over the years, there has been litigation between "psychological parents" and parents regarding custody and visitation of children. Most often the cases involved grandparents of children seeking custody or visitation with the children with whom they bonded. The Louisiana Legislature has addressed some of these concerns providing for visitation rights under certain circumstances. *See* La. Civ.Code art. 136 and La.R.S. 9:344. Recognizing the paramount right of a parent in the care, custody, and control of his or child, the legislature has provided that an award of custody to a non-parent as opposed to a parent can only occur in rare circumstances.

For these reasons, we find that before a court can award joint custody to a parent and a non-parent, Article 133 first requires a finding that an award of sole custody to the parent would cause substantial harm to the child. It is only after this finding that the best interest of the child comes into play. Therefore, we find that the

5

trial court applied the proper legal standard.

## SUBSTANTIAL HARM

Ms. Black argues that even if Article 133 does apply, the trial court erred when it found that the harm caused by separating a child from a functional parent cannot be sufficient to establish substantial harm. She claims that granting sole custody to Ms. Simms would cause Braelyn substantial harm because it would sever her relationship with Ms. Black, her brother, and her remaining grandparent, Robert Black.[2]

Comment (b) of Article 133 states that the use of the language "substantial harm," while a change in terminology, was not entirely new to Louisiana jurisprudence. The comment refers to the cases of *In the Matter of Stewart*, 602 So.2d 212 (La.App. 3 Cir. 1992), and *Pittman v. Jones*, 559 So.2d 990 (La.App. 4 Cir. writ denied, 565 So.2d 451 (La. 1990), which uses the language "substantial harm" to describe the term "detrimental to the child" which was the standard found in former Article 146. Reviewing the cases cited by both of these cases, one case is cited by both, *Merritt v. Merritt*, 550 So.2d 882 (La.App. 2 Cir. 1989). *Merritt*, 550 So.2d at 889, held that the term "detrimental to the child" broadened "the former jurisprudential rule to include, in addition to parental unfitness, inability to provide a home, and abandonment of parental rights, other circumstances that would cause the child to suffer positive and substantial harm."

"The words 'substantial harm' carry no magical connotation. 'Detrimental' and 'substantial harm' have been used interchangeably in the jurisprudence." *Robert*, 691 So.2d at 783. In *Mills v. Wilkerson*, 34,694, p. 6 (La.App. 2 Cir. 3/26/01), 785 So.2d 69, 74, the court held that substantial harm "includes parental unfitness, neglect,

_____

[2]    At the time of the trial, Sheri Black was receiving treatment for cancer. She passed away on December 1, 2008.

6

abuse, abandonment of rights, and is broad enough to include 'any other circumstances, such as prolonged separation of the child from its natural parents, that would cause the child to suffer substantial harm.'"

In an initial custody dispute between a parent and non-parent, the non-parent bears the burden of first proving that granting custody to the parent would cause substantial harm to the child; if the non-parent meets that burden of proof, the non-parent must then prove that joint or sole custody in the non-parent is in the best interest of the child in order to prevail. *Wilson v. Paul*, 997 So.2d 572. The judgment of the trial court regarding custody is subject to the manifest error standard of review. *Id*.

Ms. Black argues that she shares a parent-child bond with Braelyn and severing that bond would cause substantial harm to Braelyn. She claims that she and Ms. Simms made a joint decision to have a child. Ms. Black testified that she helped pay for part of the assisted reproduction procedures, went with Ms. Simms to the appointments, and was present at the birth of Braelyn. Ms. Black claims that she and Ms. Simms raised Braelyn and her brother together as a family unit and that Ms. Black's parents acted as grandparents toward Braelyn. Ms. Black's parents both testified to the love that they have for Braelyn and about how involved they were in her life, school, and activities. Ms. Black and her parents all testified at trial to the love, devotion, and time they had spent raising Braelyn for the approximately first six years of her life when she lived with them.

Cindy Nassar, a licensed professional counselor, became involved in the case pursuant to a mental health order issued on June 19, 2007. Ms. Nassar testified that Braelyn has an emotional connection to the Black family. During her interviews with Braelyn she became concerned that Ms. Simms was making alienating comments to

7

Braelyn about the Blacks. It was Ms. Nassar's opinion that the judgments Ms. Simms made regarding her daughter had been harmful. Ms. Nassar testified that it was really important that Braelyn have contact with both women. She testified that when Braelyn initially came to her office, she believed she had two mothers. Ms. Nassar indicated that Braelyn's view of dependability and predictability would be threatened if she did not reestablish her relationship with her psychological family. Ms. Nassar did admit that a parent is not unfit because they decide that a child can no longer associate with a family friend that has been close to the family for years.

Robbie Dowden, a social worker working with Ms. Simms, also involved Braelyn in a couple of the sessions. Braelyn told her that she did miss the Blacks when she first moved to Lake Charles. Ms. Dowden opined that the Blacks' behavior was more alienating than Ms. Simms' behavior and thought that Braelyn would be served best by denial of access to the Black family.

There is no dispute that these women had a "toxic" relationship as described by Ms. Nassar. Both have made bad decisions. Ms. Black got in trouble with her nursing job for drug use in 2004, around the same time that Ms. Simms left Shreveport. Eventually, Ms. Simms cut off all communication between Braelyn and the Blacks, people that have nurtured and cared for Braelyn since she was young. It was not until after approximately a year of no contact with Braelyn, that Ms. Black initiated this custody proceeding. While Ms. Simms' actions have deprived Braelyn of the love the Blacks have for her, we cannot say that this amounts to substantial harm to the child. Plain and simple, Ms. Simms is the mother of Braelyn and has the right to direct how Braelyn is raised. *Troxel*, 530 U.S. 57. While we may find that her actions are harsh and inconsiderate of Braelyn's and the Blacks' obvious affection and attachment to each other, we cannot say that this amounts to substantial harm in

8

which the courts should interfere with Ms. Simms' fundamental right to the custody, care, and control of Braelyn.

For these reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to Kimberlee Black.

**AFFIRMED.**

# COURT OF APPEAL

## THIRD CIRCUIT

## STATE OF LOUISIANA

## 08-1465

**KIMBERLEE CORAINE BLACK**

**VERSUS**

**KIMBERLY RENAE SIMMS**

**COOKS, J. CONCURS IN THE RESULT.**

Even if we look beyond the substantial harm to the child issue, in this case, at this time, the record indicates Ms. Black's acrimonious relationship with the mother suggests the child's best interest would not be served by an award of custody.