JAMES LOVELL
v.
FRANK BILLIOT AND RITA BILLIOT
No. 2009 CU 2264.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
BARRY P. VICE Houma, LA Counsel for James Lovell, Plaintiff/Appellee.
J. LOUIS WATKINS, III Houma, LA Counsel for Frank and Rita Billiot, Defendants/Appellants.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
Maternal grandparents appeal a judgment wherein the trial court decreed that the biological father of the minor child at issue should maintain sole custody. Finding no error in the trial court's judgment, we affirm.

FACTS AND PROCEDURAL HISTORY
On April 6, 2004, Rene Billiot gave birth to a son, whom she named Nathanial Billiot. At the time of the child's birth, the identity of the child's biological father was not conclusively known, but a paternity test conducted on May 27, 2004, revealed a 99.999% probability that James Lovell was the biological father of Nathanial. The test results were rendered on June 10, 2004.
On June 14, 2004, Rene died. Following her death, Rene's parents, Rita and Frank Billiot (collectively "the Billiots"), filed an "Emergency Petition for Intrafamily Transfer of Provisional Custody," wherein they stated that Rene was the mother of two children, Nathanial and a daughter named Gabriel.[1] The Billiots averred that there were no known fathers of the two children, and thus they prayed for an order granting them custody of the minor children. The trial court signed an order granting the Billiots custody of the children on June 18, 2004.
On February 13, 2007, Mr. Lovell filed a "Petition to Establish Paternity, Custody and Grandparents Visitation Rights," naming the Billiots as defendants in the action. In the petition, Mr. Lovell averred that he was the biological father of Nathanial, as evidenced by the paternity test results that he attached to the petition. He further declared that he had regular contact with his child, that he had a steady job, a stable home, and the ability to care for Nathanial. On the date the matter was scheduled to be heard by the trial court, the parties agreed to a consent judgment wherein Mr. Lovell was decreed to be Nathanial's father, the Billiots were allowed to maintain custody of Nathanial, with Mr. Lovell being allowed regular visitation as stipulated in the judgment; but effective June 11, 2007, Mr. Lovell would be granted full custody of Nathanial with the Billiots being allowed reasonable visitation. That judgment was signed April 17, 2007.
A few months after sole custody of Nathanial vested with Mr. Lovell, in accordance with the consent decree, the Billiots filed a "Rule for Modification of Custody and Visitation and Rule for Contempt." In the rule, the Billiots averred that as a result of Mr. Lovell being granted sole custody and removing Nathanial from their household, both Nathanial and his sister were exhibiting signs of separation anxiety and distress and developing severe emotional and psychological problems. The Billiots requested that the trial court appoint a mental health expert to conduct a psychological evaluation of the "minor children." The Billiots also requested domiciliary custody of Nathanial, or in the alternative, visitation "on a seven and seven basis" with holidays. Finally, the Billiots asked that Mr. Lovell be held in contempt of court for not allowing them reasonable visitation.
The Billiots' rule was set for a hearing, and pending the hearing, the trial court issued an interim consent decree wherein a set schedule of visitation for the Billiots was established and Jeanne Robertson, Ph.D, LPC (Licensed Professional Counselor), was appointed to conduct an evaluation of the parties in accordance with La. R.S. 9:331.
A two-day hearing was held on the Billiots' rule, at which the trial court considered the testimony of the parties, Dr. Robertson, and several fact witnesses, as well as photos and other documentary evidence introduced by the parties. Following the presentation of evidence, the trial court rendered judgment granting Mr. Lovell sole custody of Nathanial and granting the Billiots visitation with the child as specified in the visitation plan attached to the judgment. The Billiots have appealed, asserting that the trial court erred in allowing Mr. Lovell to maintain sole custody of Nathanial.

DISCUSSION
Parents have a paramount right of custody. They may be divested of that right only for compelling reasons shown by clear and convincing evidence. If a prior award of custody has been made by consent decree, the proponent for change must show that a material change in circumstances affecting the child's welfare has occurred since the last custody judgment before the court will consider a change in custody.... However, if a nonparent moves for a change in parental custody, the Bergeron rule does not provide the standard for divestiture. The legislature has provided that standard or test in Civil Code article 133.
Robert v. Gaudet, 96-2506, pp. 5-6 (La. App. 1st Cir. 3/27/97), 691 So. 2d 780, 783 (citations omitted).
Louisiana Civil Code article 133 provides:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
In contesting the trial court's decree that allowed Mr. Lovell to maintain sole custody, instead of designating them as domiciliary custodians or granting them joint custody of Nathanial, the Billiots assert that the trial court erred in finding that they failed to prove "that substantial harm would occur to the minor child if he was not returned to his `birth family'" and Mr. Lovell was allowed to maintain sole custody.
The primary consideration and prevailing inquiry of a child custody case is whether the custody arrangement is in the best interest of the child. McCormic v. Rider, 09-2584, pp. 3-4 (La. 2/12/10), ___ So. 3d ___. Keeping in mind that every child custody case must be viewed in light of its own particular set of facts, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Smith v. Tierney, 04-2482, p. 7 (La. App. 1st Cir. 2/16/05), 906 So. 2d 586, 590-591. The trial court has great discretion in this area, and its determination will not be disturbed in the absence of a clear abuse of discretion. McCormic, 09-2584 at 3, ___ So. 3d at ___.
Based on the evidence presented, the trial court made the following observations:
There was some evidence and testimony concerning some problems that James Lovell had as a child, his previous hospitalizations. But there's no evidence that, that has a bearing on his mental condition, psychological condition today. Dr. Robertson testified that she did not see any evidence of any psychosis when she spoke with Mr. Lovell and examined him or during those times when they had some counseling or evaluation sessions.
...
Now, I take issue with some of the statements that Dr. Robertson made in her report because the problem is Dr. Robertson saw one thing, but we have some testimony that directly contradicts some of the observations that she made.
So without Dr. Robertson having the benefit of having discussed certain things with the witnesses who saw Mr. Lovell act different or act in a different way or saw his wife, Erica, act in a different way, maybe this would have changed her opinion. I don't know. Certainly, on the factual basis upon which she has rendered those opinions seems to be contradicted by other testimony we have.
...
One thing this Court always does in a situation of this nature, with a non-parent and a parent, when that particular parent has not been part of the child's life is to try to put into effect some sort of a graduated schedule of visitation so the child can learn to know his or her parent. And that is because of the expert testimony I've had in cases of this nature which has told me this is the way to do  to handle these things. There's no case that is the same. Each case is different. Each case has different factors.
...
What I do know and what I do believe is that the parties, in this case, truly love this child.
...
Since we were in court last  I mean, I say "last." That's not correct. Since the parties reached a consent agreement in June, there has been visitation and [Nathanial] living with his father and then going visit with the Billiots. And, of course, there have been some problems.
We've had some testimony, in connection with this matter, that the Billiots feel that Mr. Lovell and his family are trying to exclude them from Nathan's life. I think that from what I've heard an argument can be made that certainly there are feelings to the exact opposite, that the Billiots were trying to control this child's life and maybe exclude the Lovells. And I'm not saying either one of those is correct. I'm saying that there is certainly argument that can be made from both sides that both felt the other side was doing the same thing.
...
This Court is of the opinion that based on the evidence that Mr. Lovell should remain as the sole custodian of the minor child in this case subject to visitation rights of the Billiots.
The trial court then went on to outline a specific schedule of visitation for the Billiots to spend time with Nathanial. The trial court also admonished the parties to be flexible regarding the relationship between Nathanial and his sister and declared that Gabriel should be allowed to spend time with Nathanial at the Lovells' home, as well as at the Billiots. See also Black v. Simms, 08-1465, pp. 8-9 (La. App. 3d Cir. 6/10/09), 12 So. 3d 1140, 1145 (where although the biological mother had severed the child's relationship with the child's half-brother and the child's other parent (the mother of the half-brother) and grandparent (the people who had nurtured and cared for the child since she was young), the court nevertheless held that "we cannot say this amounts to substantial harm in which the courts should interfere with [the biological mother's] fundamental right to the custody, care, and control of [the child].")
In reviewing this matter, we find the trial court very closely and carefully considered all of the evidence presented and we agree that the Billiots failed to prove that the award of sole custody to Mr. Lovell has or will result in substantial harm to Nathanial. Accordingly, we find no abuse of the trial court's great discretion in the well-crafted decree appealed herein.

CONCLUSION
For the foregoing reasons, we affirm the November 5, 2008 judgment awarding sole custody of the minor child to his father, James Lovell, subject to the specified visitation of the Billiots. All costs of this appeal are cast to the appellants, Frank and Rita Billiot.
AFFIRMED.
NOTES
[1] Gabriel was born on March 3, 2003.