STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-563 consolidated with CW 12-324


SUZANNE L. CATHEY

VERSUS

MELISSA LYNN OGEA, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2011-1277
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Billy Howard Ezell, and J. David Painter, Judges.


AFFIRMED AS AMENDED.

Billy Edward Loftin, Jr.
113 Dr. Michael DeBakey Drive
Lake Charles, LA 70601
(337) 310-4300
COUNSEL FOR INTERVENORS/APPELLEES:
    Steven Smith
    Cynthia Smith

John Green
1135 Hodges St.
Lake Charles, LA 70601
(337) 990-0060
COUNSEL FOR PLAINTIFF/APPELLANT:
    Suzanna L. Cathey

**Melissa Lynn Ogea**
**In Proper Person**
**4461 Dean Street**
**Lake Charles, LA 70601**

**EZELL, Judge.**

At issue in this child custody matter is the grant of permanent custody of Jaycen Ogea to his maternal aunt and uncle. Suzanne Cathey, who also petitioned for custody of Jaycen, appeals the decision of the trial court. Neither Jaycen's mother nor father was willing or able to care for their child.

## FACTS

Melissa Ogea is the mother of four children: an older daughter, Ann Marie (custody of whom was not at issue in the trial court); Trent Cathey, a son born October 10, 2003; Sarah Cathey, a daughter born April 5, 2007; and Jaycen Ogea, a son born June 7, 2010. Trent and Sarah have the same biological mother and father, who were never married. Trent and Sarah's paternal aunt is Suzanne Cathey, who is the Appellant in this case. Jaycen has the same mother but a different biological father.

In July 2007, Trent went to live with Suzanne and her partner Charlotte Ford. Initially, Suzanne and Charlotte would keep Trent occasionally to help out Melissa and Suzanne's mother, who kept Trent on occasion. He would spend the night for several nights before going home. Eventually, he just stayed at their house. At that time, Trent's mother struggled with serious drug problems and his father was in and out of prison. When Trent went to live with Suzanne and Charlotte, he had behavioral and developmental problems. He initially went to public school, but Suzanne quit her job and began homeschooling him. Trent has made significant improvements since moving in with Suzanne and Charlotte

Sarah, the younger daughter, came to live with her Aunt Suzanne in November 2007. In February 2008, Suzanne was granted provisional custody of Trent and Sarah by their parents. Suzanne was granted provisional custody every year after that, with the last grant occurring on January 7, 2011.

Jaycen began living with Suzanne in October 2010. However, on March 13, 2011, his mother Melissa, with the assistance of Sulphur police, removed Jaycen from Suzanne. Thereafter, on March 23, 2011, Suzanne filed a petition for custody of all three children. On that same day, by ex parte hearing, Suzanne was granted the temporary custody of all three minor children.

On April 6, 2011, Cynthia and Steven Smith filed a petition of intervention seeking the permanent custody of the youngest child, Jaycen. Cynthia is the half-sister of the children's mother. All parties filed an exception of no right of action.

On August 27, 2011, the Smiths, in conjunction with Suzanne, amended their petitions to include Joseph Simon as a defendant since he is the biological father of Jaycen. At the time the petition was filed, Joseph was in jail, but he was out in time to testify at the trial.

On January 23, 2012, the trial court heard the exceptions of no right of action filed by the parties. After hearing arguments and testimony, the trial court denied the exceptions and proceeded to trial. Trial on the custody matters was held on January 24 and 25, 2012.

The trial court recognized that the parents acknowledged that they cannot or are unable to provide for the minor children. The trial court then found that it was in the best interests of Trent and Sarah that they should remain in the care, custody, and control of Suzanne since they had been in her care for more than four years in a wholesome and stable environment.

Regarding Jaycen, the trial court relied upon La.Civ.Code art. 132 and awarded custody to the Smiths because it was the mother's wish that her sister and husband have custody of Jaycen. Jaycen's biological father also expressed his desire to have Jaycen live with the Smiths. The trial court further recognized that the best interest of Jaycen dictates that he live with the Smiths.

Suzanne appealed the judgment granting permanent custody, care, and control of Jaycen to the Smiths. Suzanne also sought a writ of review of the trial court's decision with this court. We denied the writ application finding that an adequate remedy existed by appeal. Suzanne sought a rehearing, and this court granted a rehearing for the purposes of consolidating her writ application with her appeal. Pursuant to Uniform Rules, Courts of Appeal, Rule 5-1(b), oral argument was expedited.

On appeal, Suzanne argues that the trial court erred in finding that the Smiths had a right of action to intervene for the custody of Jaycen. She also argues that Article 132 is not applicable in this case and that due to this error of law, this court should conduct a de novo review and award her the permanent custody, care, and control of Jaycen.

## RIGHT OF ACTION

Suzanne first argues that the trial court erred in denying her exception of no right of action and in failing to dismiss the Smith's intervention. She argues that the Smiths had no connection with Jaycen to support their claim for custody.

"[T]he focus in an exception of no right of action is whether the particular plaintiff has a right to bring the suit,. . . . [and] [t]he function of an exception of no right of action is a determination of whether plaintiff belongs to a class of persons to whom the law grants the cause of action asserted in the petition." *Brielle's Florist & Gifts, Inc. v. Trans Tech, Inc.*, 11-260, p. 3 (La.App. 3 Cir. 10/5/11), 74 So.3d 833, 835 (quoting *Badeaux v. Sw. Computer Bureau, Inc.*, 05-612, 05-719, pp. 6-7 (La. 3/17/06), 929 So.2d 1211, 1216-17).

In this case, Suzanne filed a petition seeking sole custody of the three minor children. The Smiths intervened in the matter seeking sole custody of Jaycen. Therefore, all parties are seeking to divest the parents of custody.

3

Before a parent is divested of custody, the redundant dual test must be applied. *Black v. Simms*, 08-1465 (La.App. 3 Cir. 6/10/09), 12 So.3d 1140.

> The redundant dual test is a dual-pronged test. *Lions v. Lions,* 488 So.2d 445 (La.App. 3 Cir.1986). First, before a trial court deprives a parent of the custody of his or her child, the trial court must first determine that an award of custody would cause substantial harm to the child. If so, then the courts look at the best interest of the child factors in Article 134 to determine if an award of custody to a non-parent is required to serve the best interest of the child. *Wilson v. Paul,* 08–382 (La.App. 3 Cir. 10/1/08), 997 So.2d 572 (citing *Tennessee v. Campbell,* 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274).

*Black*, 12 So.3d at 1143.

Article 132 provides that if the parents are in agreement as to who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. We find that Article 132 is inapplicable when a party is seeking to divest a parent of custody. Clearly, La.Civ.Code art. 133 applies since a nonparent is seeking to divest parents of custody. *Knisely v. Knisely*, 05-1015 (La.App. 3 Cir. 3/1/06), 924 So.2d 423; *In re Melancon*, 10-1463 (La.App. 1 Cir. 12/22/10), 62 So.3d 759; *Street v. May*, 35,589 (La.App. 2 Cir. 12/5/01), 803 So.2d 312. A nonparent seeking custody must establish that an award of custody to a parent will result in substantial harm to the child before any other evidence is considered.

We recognize that Comment (b) to Article 132 provides that the agreement may include an agreement for an award of custody to a third person. The Smiths argue that Article 132 is applicable because both the mother and father testified that they wanted the Smiths to have custody of Jaycen. However, Article 132 contemplates that at least one of the parents has provoked the jurisdiction of the trial court to decide a custody issue. Suzanne and the Smiths are seeking to divest

4

both parents of custody. This proceeding was initiated by nonparents seeking to divest the parents of custody, so clearly Article 133 applies.

Louisiana Civil Code Article 133 provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

Suzanne argues that Article 133 contemplates a preferential order of treatment in that a person with whom the child has been living has preference as to any other person and that the court must award custody to that person. We disagree. Article 133 provides for an award of custody to someone other than the parent when the nonparent establishes that custody in either parent would result in substantial harm to the child. Article 133 provides that this person could be someone with whom the child has been living in a stable environment or someone who can provide a stable environment. There is no order of preference. It is the best interest of the child which dictates who will be granted custody of the child.

In their petition of intervention, the Smiths alleged that they could provide a wholesome and stable environment for Jaycen to live in. Both Suzanne and the Smiths have a right of action under Article 133 to assert an action for custody of Jaycen but still must meet the stringent burden of proof that an award of either joint custody to the parents or sole custody to one parent would result in substantial harm to the child. The trial court's ruling denying the exception of no right of action was proper.

## CUSTODY

Suzanne argues that the trial court erred in applying Article 132 to the facts of this case and that this court should conduct a de novo review. As previously

discussed, Article 132 does not apply when nonparents are seeking to divest parents of custody. The trial court erred in applying Article 132.

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.,* 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds,* 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied,* 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.,* 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha,* 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo.* *Lasha,* 625 So.2d at 1006.

*Evans v. Lungrin*, 97-541, 97-577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

Therefore, we will conduct a de novo review of the record.

The parents of Jaycen did not dispute that were not capable of taking care of their child. That decision has not been appealed. Therefore, the redundant dual test requires that we look at the best interest of the child factors in Article 134 in making a determination regarding the award of custody between nonparents. *Black*, 12 So.3d 1140.

At the outset, we note that Jaycen would be fortunate to live with either Suzanne or the Smiths. However, we now consider the factors of Article 134 in rendering a determination as to Jaycen's best interest. Article 134 sets forth the following factors in determining the child's best interest:

> (1) The love, affection, and other emotional ties between each party and the child.

> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

6

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

The court is not bound to make a mechanical evaluation of all the Article 134 factors but should decide each case based on its own facts in light of those factors. *Thibodeaux v. O'Quain*, 09-1266 (La.App. 3 Cir. 3/24/10), 33 So.3d 1008. The factors, which are not exclusive but are provided as a guide to the court, must be weighed and balanced in view of the evidence presented. *Id*.

Testimony revealed that Suzanne has done an excellent job of caring for Trent and Sarah while she has had custody of them. Suzanne took the children in when she saw that they were in a terrible home situation due to both of their parents' serious drug issues. She quit her job to homeschool Trent and has made great strides in getting him back on track. Suzanne testified that they regularly bring the children to church.

The Smiths, who have been married for twenty-two-and-a-half years, have raised six children of their own. The Smiths also homeschool their children and have also done an excellent job. All children are exceling in their schoolwork. Kimberly Kane, a friend of the Smiths, testified that the Smiths are some of the best parents she has ever met and that they always put family first. There is no doubt that Suzanne and the Smiths would provide a stable home environment for Jaycen.

Jaycen was born on June 7, 2010. He started living with Suzanne when he was about ten months old. Melissa removed Jaycen from Suzanne's care in March 2011. Suzanne then filed the petition for custody on March 23, 2011, and the Smiths intervened in the proceedings in April 2011. So, while Jaycen has been living Suzanne, he has resided with her for only a few months during his short life.

Cynthia testified that she did not realize that Trent and Sarah were living with Suzanne. She testified that it came about gradually. The Smiths both stated that they did not seek custody of Trent or Sarah because they had been with Suzanne for such a long period of time and they did not want to uproot the children from a home that were very familiar and comfortable with. The Smiths agreed that Trent and Sarah were attached to Suzanne and Charlotte. Admittedly, the Smiths live in Texas, so they have not had a great amount of contact with the children. They and their six children have visited with the children when they come to visit family. Cynthia testified that her children get along well with Jaycen and Jaycen enjoyed being with her children. She also testified that Ann Marie, Melissa's oldest child, spends time with them every summer. Cynthia testified that she told her sister, Melissa, that she and her husband wanted to adopt the baby when Melissa was pregnant with Jaycen. She also bought a baby bed for Jaycen.

What really concerns us is the fact that while Suzanne is in a stable relationship with her partner, Charlotte, Suzanne lacks stability in the financial situation. Suzanne no longer works and is dependent on Charlotte's income. Also, the home they live in is Charlotte's home. If for some reason Suzanne and Charlotte were to part ways, Suzanne would be left without an income to support the children and without a home since Charlotte is not legally obligated for the children. Suzanne did indicate that there is a possibility she could live in a mobile home that she owns, but it is now rented. Furthermore, Suzanne does not have health care insurance because she cannot be carried on Charlotte's insurance. The children would also not be able to get health insurance under Charlotte's insurance. Suzanne testified that she had not looked into the cost of getting health insurance for the children.

There is the fact that if Suzanne had custody of Jaycen, he would be able to live with his half-siblings. He would also be closer to his other family that lives in the area.

We realize that custody of half-siblings is a factor to be considered. *Street*, 803 So.2d 312. "While it is true that generally, it is preferable to keep siblings together, we are aware that it is not required if the trial court determines that separating them would be in the best interests of the particular children." *Mills v. Hardy*, 02-1062, p. 12 (La.App. 3 Cir. 3/26/03), 842 So.2d 443, 452,

After reviewing these factors, we find that the best interest of Jaycen would be served by awarding custody to the Smiths. They have a wholesome and stable home environment and can provide security for Jaycen's financial and health needs. Jaycen has enjoyed time with his cousins and is still young enough that he can adapt to his new home with ease. Cynthia is Jaycen's maternal aunt, and the Smiths live close enough for visits with the family. The Smiths are willing and

9

will be able to facilitate a relationship with Jaycen and his half-siblings. Therefore, we do find that visitation between the siblings would help foster their relationship. Pursuant to La.R.S. 9:344 we will amend the judgment accordingly.

For these reasons, the judgment of the trial court awarding custody of Jaycen Ogea to Cynthia and Steve Smith is affirmed. The judgment is amended to provide that Jaycen shall enjoy visitation with Trent and Sarah Cathey as follows:

Every third weekend of the month from 6:00 p.m. on Friday to 6:00 p.m. on Sunday in the State of Louisiana.

In even-numbered years on the following holidays: Easter, Fourth of July, Thanksgiving, and Christmas in the State of Louisiana. From 5:00 p.m. on the Thursday before Easter until 6:00 p.m. on the Sunday after Easter; From 5:00 p.m. on July 2 until 6:00 p.m. on July 6; From 5:00 p.m. on the Friday before Thanksgiving until 6:00 p.m. on the Sunday after Thanksgiving; From 5:00 p.m. on December 22 until 6:00 p.m. on January 2.

If one of the above major holidays falls during a regular weekend visitation in an odd-numbered year, then Jaycen will still have visitation with Trent and Sarah.

Unless otherwise agreed to by the parties, the exchange of the children will take place in Winnie, Texas.

In all other respects the judgment is affirmed. All costs of this appeal are assessed one-half to the Smiths and one-half to Suzanne Cathey.

**AFFIRMED AS AMENDED.**