NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-769

BRIAN D. DOYAL

VERSUS

HANNA DOYAL AND KENNETH HESS

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 99,983
HONORABLE TONY ALAN BENNETT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
CHIEF JUDGE

**********

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

AFFIRMED.

Mary K. Beaird
Attorney at Law
303 E. Texas Street
Leesville, LA 71446
(337) 944-0299
COUNSEL FOR DEFENDANT-APPELLANT:
      Hannah Doyal

**Elvin C. Fontenot, Jr.**
**Attorney at Law**
**110 E. Texas Street**
**Leesville, LA 71446**
**(337) 239-2684**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
**Brian D. Doyal**


**Kenneth Hess**
**In Proper Person**
**1405 Hwy 1153**
**Oakdale, LA 71463**

**PICKETT, Chief Judge.**

The appellant, Hannah Doyal,[1] appeals the judgment of the trial court in favor of her uncle, Brian Doyal, awarding joint custody of her minor child, Ashlynn Hess, to Hannah and Brian, naming Brian as the domiciliary parent, and awarding visitation to Hannah and the child's father, Kenneth Hess.

## FACTS

Hannah and Kenneth had a relationship that resulted in the birth of Ashlynn Hess on January 28, 2015. At that time, they lived together in Oakdale. Brian, the paternal uncle of Hannah, assisted in caring for Ashlynn. Brian lived in Anacoco, Louisiana. Hannah was enrolled in school at Northwestern State University in Natchitoches. After Ashlynn was born, Hannah would sometimes drop Ashlynn off with Brian for him to look after her while Hannah attended school.

Brian claims that Ashlynn began living with him when Ashlynn was about six weeks old and has lived with him since that time. Hannah disputes that and claims that Ashlynn lived with her and Kenneth in their home in Oakdale until she and Kenneth split up sometime after Ashlynn turned four years old. Hannah admits that Ashlynn began spending the night at Brian's home one to three nights per week sooner than that. Kenneth testified that he would call Brian during this period and ask him to bring Ashlynn to visit when he had two days off from his job during the week, but Ashlynn spent more time in Anacoco with Brian than she did in Oakdale.

When she left Oakdale after ending her relationship with Kenneth, Hannah claims she and Ashlynn moved into Brian's home in late January 2019. It is undisputed that Ashlynn began attending pre-K in Anacoco in the fall of 2018, while Hannah still lived with Kenneth in Oakdale.

---

[1] We note that Ms. Doyal's name is spelled differently in the original petition (Hanna) and in her pleadings (Hannah). We will use the spelling used in Ms. Doyal's pleadings in this opinion.

From late January 2019 until May 2019, Hannah and Ashlynn resided with Brian. Hannah then moved out of Brian's house and went to live with a co-worker from Lowe's. Ashlynn stayed with Brian. At the end of 2019 or the beginning of 2020, Hannah moved to New York, where her sister was in law school. Ashlynn continued to live with Brian. Hannah claims this situation was intended to be temporary.

On May 4, 2021, Brian filed a Petition for Custody, alleging that Hannah and Kenneth abandoned Ashlynn. Brian alleged that he has been the primary caretaker for Ashlynn since she was six weeks old, has exclusively supported the child financially, and has made decisions concerning the child's health, education, and welfare. Hannah filed an Answer and Reconventional Demand for Petition for Ex Parte Custody, Civil Warrant, and Motion to Strike. The trial court denied the motion for an ex parte order of custody and for a civil warrant and set the matter for a hearing.

The court heard evidence in this matter over six days: September 13, 2021, and January 11, April 12, June 13, June 28, and June 30, 2022. Following the September 13, 2021 hearing, the trial court entered an Interim Order memorializing certain stipulations of the parties, including that Ashlynn would remain in the care of Brian subject to specified visitation in favor of Hannah.

The court heard testimony from Hannah, Kenneth, Brian, Kenneth's nieces and nephew who lived with Kenneth and Hannah in Oakdale, Brian's husband, Hannah's sister and mother, friends of the parties, and personnel at the school Ashlynn attended in Anacoco, including Ashlynn's teachers. The court found that placing Ashlynn in the exclusive custody of Hannah would cause substantial harm to the child. The trial court awarded joint custody to Brian and Hannah and designated Brian as the domiciliary parent. The trial court granted reasonable

2

visitation to Kenneth subject to the agreement of the parties. The trial court ordered Brian to facilitate video visitation with Ashlynn three days a week. The trial court further ordered that Hannah would be allowed to visit Ashlynn in Vernon Parish upon giving Brian forty-eight-hours' notice. The trial court also set up a specified visitation for summer and the Christmas, Easter, and Thanksgiving holidays.

Hannah now appeals that judgment.

## ASSIGNMENTS OF ERROR

Hannah asserts three assignments of errors:

A. The trial court was manifestly erroneous in awarding custody to a non-parent over a biological parent absent a substantiated finding that substantial harm would result from the child being placed with one or both parents.

B. The trial court erred in finding that Hannah abandoned her parental authority when Brian Doyal inhibited Hannah from contacting the child once Hannah insisted on the child being returned to her care.

C. The trial court erred in divesting Hannah of her parental rights of the child without evidentiary support of parental unfitness.

## DISCUSSION

The paramount consideration in resolving custody disputes is the best interest of the child. La.Civ.Code art. 131. This includes the resolution of disputes between a biological parent and a non-parent. *Cook v. Sullivan*, 20-1471 (La. 9/30/21), 330 So.3d 152. Each child custody case must be considered in light of the particular facts and relationships unique to that case. *Id.* We review a trial court's judgment in a custody case using the abuse of discretion standard. *Leard v. Schenker*, 06-1116 (La. 6/16/06), 931 So.2d 355. A trial court's factual findings in a child custody case will not be disturbed unless there is a showing of manifest error. *Guidry v. Guidry*, 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. "The trial court is in a superior position to assess witness credibility and the best interests of the child after

considering all of the testimony and evidence." *Joubert v. Joubert*, 19-187, pp. 5-6 (La.App. 3 Cir. 10/9/19), 283 So.3d 502, 505.

In her first assignment of error, Hannah argues that the trial court erred in awarding custody of Ashlynn to Brian, a non-parent, without first finding that substantial harm would occur to the child if she were placed with one or both parents. She argues that, while the trial court stated in its oral reasons for judgment that substantial harm would befall Ashlynn if Hannah was granted sole custody, the evidence does not support that finding.

The trial court correctly relied on La.Civ.Code art. 133, which governs custody disputes between a parent and a non-parent, which states:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

The evidence presented at trial in this matter was often contradictory. Hannah testified that Ashlynn lived with her in Oakdale until they both moved into Brian's home in Anacoco in late January 2019. Hannah also testified that she and Ashlynn stayed with Brian until about May 2019, when Hannah moved in with a friend. At that time, she left Ashlynn in the care of Brian. In December 2019, Hannah moved to New York, where her sister was in law school. Hannah testified that the understanding was that Brian would care for Ashlynn until Hannah could establish herself in New York. Hannah claims she asked Brian to return Ashlynn to her care in February 2020, but the COVID-19 pandemic began in March 2020, and Hannah agreed to let Ashlynn remain in Brian's care at that time. Hannah testified that while she was in Vernon Parish and staying with Brian or her mother in December 2020, she again discussed with Brian the possibility of Ashlynn moving to New York to live with her after the school year was complete. In February 2021, Hannah testified

4

that she offered to purchase plane tickets for Brian and Ashlynn to go to New York during the summer, with the intention that Ashlynn would remain with her when Brian returned home. Hannah testified that she lived in a studio apartment with her fiancé at the time of trial, but the apartment could be converted to a two-bedroom apartment if Ashlynn were to live with her. When Brian filed his petition for custody in May 2021, the relationship and communication between Brian and Hannah broke down.

Brian's testimony tells a different story. He testified that he began helping to care for Ashlynn as soon as she was born. He would either drive to Oakdale to babysit Ashlynn while Hannah was at school and Kenneth was at work, or, when Hannah returned to school at Northwestern State University in Natchitoches, Hannah would drop Ashlynn off with him for the day. Soon Hannah began asking for Brian to keep Ashlynn overnight. Brian claimed that Ashlynn was primarily in his care by the time she was six weeks old.

Kenneth testified that he would have to call Brian when he had days off from work to ask him to bring Ashlynn to Oakdale so that he could visit his daughter. Kenneth's nephew, Cullen Lane Austin, who was eleven when he and his sisters moved into the house with Kenneth and Hannah before Ashlynn was born, testified that Ashlynn "was gone more than she was at home." Karly Austin, Cullen's sister, testified that Ashlynn began living with Brian when she was about two months old. Karly testified that Hannah took jobs in Arkansas and Lafayette and left Ashlynn with Brian.

The evidence shows that in August 2018, Brian enrolled Ashlynn in the Pre-K program at Anacoco School. Hannah agreed that she wanted Ashlynn to go to school in Anacoco and asked him to enroll her. Ashlynn has attended school in

Anacoco since that time. Brian also introduced evidence that he provided for all of Ashlynn's financial, medical, and educational needs since she has been in his care.

"The words 'substantial harm' carry no magical connotation. 'Detrimental' and 'substantial harm' have been used interchangeably in the jurisprudence." *Black v. Simms*, 08-1465, p. 6 (La.App. 3 Cir. 6/10/09), 12 So.3d 1140, 1144 (quoting *Robert v. Gaudet*, 96-2506, p. 6 (La. App. 1 Cir. 3/27/97), 691 So.2d 780, 783). "'Substantial harm' includes parental unfitness, neglect, abuse, inability to provide a home, and abandonment of rights." *Cook*, 330 So.3d at 157-58.

After reviewing all the evidence presented at the trial, we find that the trial court determined that Brian assumed the role of primary caregiver for Ashlynn well before Hannah moved to New York. The trial court obviously determined that Brian and the witnesses he presented to support his claim were more credible than Hannah's evidence presented on the issue. We find no manifest error in the trial court's ruling.

Further, the trial court did not err in finding that Brian proved by clear and convincing evidence that Hannah abandoned Ashlynn to Brian's care by leaving Ashlynn in Brian's care for most of Ashlynn's life. As the jurisprudence has noted, proof of abandonment can show that substantial harm to the child will result pursuant to La.Civ.Code art. 133. The trial court did not err in reaching the conclusion that Hannah abandoned Ashlynn. We further find no abuse of discretion in the trial court's determination that Brian was a "person with whom the child has been living in a wholesome and stable environment" for the purposes of determining who should have custody of Ashlynn pursuant to Article 133.

In her second assignment of error, Hannah argues that Brian inhibited her ability to contact Ashlynn once Hannah insisted that Ashlynn be returned to her care. The evidence presented to the trial court shows that Brian made every effort to

support the relationship between Ashlynn and both Hannah and Kenneth. Brian would bring Ashlynn to Oakdale anytime Hannah or Kenneth asked. Hannah, her sister, Kenneth, and Kenneth's nieces and nephews testified that they visited Ashlynn at Brian's home in Anacoco. Hannah depended on Brian to care for Ashlynn for many years, and their relationship was civil until early 2021.

The evidence also shows that once Hannah insisted on Ashlynn being brought to New York to live with her, the relationship between Brian and Hannah became acrimonious. Brian testified that Hannah only wanted Ashlynn brought to New York so that she could qualify for a rent subsidy. Brian also began refusing Hannah's calls and inhibited her ability to visit Ashlynn on one occasion. The trial court acknowledged this, noting that Brian became "vindictive" after litigation commenced. As part of its oral reasons for judgment, which the trial court incorporated as part of its written judgment, it ordered Brian to facilitate the relationship between Ashlynn and Hannah.

We find that the trial court properly analyzed the factors in La.Civ.Code art. 134 to determine whether custody with Brian was in the best interest of Ashlynn. We find no abuse of discretion in its determination that granting joint custody to Brian and Hannah, with Brian named as the domiciliary parent, subject to reasonable visitation for Kenneth and specified visitation for Hannah, was in Ashlynn's best interest. The trial court considered the situation and conduct of the parties throughout Ashlynn's life, not just in the period during this custody litigation.

In her final assignment of error, Hannah argues that the trial court erred in divesting her of her parental rights without a finding that Hannah was an unfit parent. As we have discussed, the trial court employed the proper standard in determining that substantial harm would occur to Ashlynn if she were placed in the custody of her parents. We find no error in the factual findings of the trial court, which are

7

largely based on credibility determinations that the trial court is in the best position to evaluate. The trial court did not divest Hannah of parental rights by granting her joint custody of Ashlynn with liberal visitation, considering the distance between Anacoco and New York. The trial court also made a finding that Brian and Kenneth have determined a reasonable visitation schedule for Kenneth and Ashlynn, which has not been appealed, and we do not disturb this finding.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Hannah Doyal.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.